## TRINITY COUNTY V. POLK COUNTY.

### (Case No. 904.)

1. TAXATION — COUNTY BOUNDARY.— The legislature, by act of March 11, 1875, attached a portion of Trinity county to Polk county, and inserted in the act the following proviso: "*provided*, the citizens in said detached portion of Trinity county shall pay their *pro rata* portion of the county indebtedness up to the date of the passage of this act." In a suit brought by Trinity county against Polk county to recover the *pro rata* portion of the indebtedness of Trinity county alleged to be owing by the citizens living in the detached territory, and in the alternative to recover the territory, *held,*

(1) At the time of the passage of the act the control of the legislature over county boundaries was absolute, though such power under the constitution no longer exists.

(2) The act should be construed as it would be if the word *provided* were omitted from the act.

(3) The detached territory became absolutely and unconditionally a part of Polk county upon the approval of the act, and this without reference to whether the line by which the act designated the detached territory was actually run upon the ground or not.

(4) Trinity county could not recover back the detached territory, nor the amount levied and collected by Polk county upon the subjects of taxation therein.

(5) Nor could it recover from Polk county a *pro rata* of the debt of Trinity county, or cause Polk county to levy and collect a tax on the property in the detached territory to pay any portion of the debt of Trinity county.

(6) The action could not be maintained, but the judgment awarding an execution against appellant for costs was error.

APPEAL from Polk. Tried below before the Hon. H. C. Pedigo.

This suit was brought by Trinity county against Polk county March 31, 1877, to recover $620, claimed to be the *pro rata* portion of the existing indebtedness of Trinity county, owing by the citizens of a certain territory taken from Trinity and attached to Polk county; and in the alternative to recover the said territory, and all the taxes that had been collected from the same by Polk county.

The act of the legislature attaching the territory to Polk county is as follows:

"An act attaching a portion of Trinity county to Polk county.

"Section 1. Be it enacted by the legislature of the state of Texas, that that portion of Trinity county situated within the following metes and boundaries, to wit: Beginning at the northwest corner of Polk county; thence running to the mouth of Bull creek at its intersection with Big Piney creek; thence to the mouth of Alabama creek, where it intersects the Neches river; thence down said river to the Tyler county line; thence with the Tyler county line to Polk county line, and with said Polk county line to the place of beginning, be and the same is hereby attached to and made a

part of Polk county, Texas; *provided*, the citizens in said detached portion of Trinity county shall pay their *pro rata* portion of the county indebtedness up to the date of the passage of this act.

"Section 2.   That this act shall take effect from its passage.

"Approved March 11, 1875."

The case made by the original and amended petition was, in substance, that the *pro rata* of Trinity county's indebtedness owing by that territory was $620.   Upon the passage of the act Polk county had, without running and marking the lines named therein, and without paying to Trinity county the said sum of $620, assumed control of the territory to the exclusion of Trinity county; that the county court of the latter addressed a request to the county court of the former to levy and collect of this territory a sufficient tax to meet and discharge this *pro rata*.   This request was refused.   Appellant then made out an account against appellee for the sum of $620, which was presented to the county court of appellee, which was rejected.   Also an account for all the taxes collected by Polk county, and a demand for the restoration of the territory to Trinity county; this was also rejected.   The prayer was for judgment for the $620, and in the alternative to recover the territory and all taxes collected from the same by appellee.   Appellee answered by general and special exception, general denial, and other defenses not necessary to be noticed.

Trial was had October 19, 1877, and appellee's general demurrer to appellant's petition was sustained, and the cause dismissed.   From that judgment this appeal was taken.

The errors assigned were: 1st. The court erred in sustaining appellee's general demurrer.   2d. The court erred in dismissing the cause, and ordering execution to issue against appellant.

*James E. Hill*, for appellant.

I. A proviso repugnant to the main body of an act repeals the purview, as it speaks the last intention of the makers.   Sedgw. on Stat. and Const. Law, 47, 49, and note †.   A proviso is intended to restrain the enacting clause.   Wayman *v.* Southard, 10 Wheat.   A proviso is to be considered as limiting the enacting clause, and its effect is to be restrained to that.

II. A statute creating a public municipal corporation for public purposes must be strictly construed; and whatever is not expressly given, or is a necessary means to execution of expressly granted powers, is withheld.   Douglass *v.* Placerville, 18 Cal., 643; Clark *v.* Davenport, 14 Iowa, 494; Leavenworth *v.* North, 1 Kans., 432;

Leonard v. Canton, 35 Miss., 189; Marietta v. Fearing, 4 Ohio, 427; Cobb v. Kingman, 15 Mass., 197; New London v. Brainard, 22 Conn., 552; Oakland v. Carpenter, 18 Cal., 540; Treadwell v. Com., 11 Ohio, 183.

III. When a new county has been organized (from the territory of an old county) not in accordance with law, the old county has its action, and chancery will restore it to its original boundaries. Maury County v. Louis County, 1 Swan, 236.

IV. Though the act of 11th March, 1875 (General Laws 14th Leg., 2d Sess., p. 81), attached a portion of the territory of appellant to appellee, it was conditional, and only took effect upon compliance (1) with the proviso of the act, and (2) with the general laws of this state. Pasch. Dig., 434, 1057, 1062, 1063.

V. The territory of appellant attempted to be attached to appellee, not being bounded by natural objects, or surveys, or known boundaries, until a survey thereof is made as the statute requires, it remains the territory of appellant (see Acts of 20th March, 1848 (Pasch. Dig., 1073 *et seq.*); 12th May, 1846 (Pasch. Dig., 1057 *et seq.*); 16th December, 1863 (Pasch. Dig., 434); 20th March, 1848 (Pasch. Dig., 1063 *et seq.*), unless the jurisdiction of appellee be acquiesced in by appellant until legislative action shall adjust the boundaries. People v. Farnham, 35 Ill., 562. Boundaries shall be definite, fixed and certain (1 Dillon, § 124); and where lines of a county have once been run by public authority (as the original boundaries of appellant), they must be regarded as the true boundaries until altered by the like authority. Board v. Head, 3 Dana, 489.

VI. Upon the division of an old corporation, and the creation of a new corporation out of part of its inhabitants and territory, or upon the annexation of part of its territory to another corporation, the legislature may provide for an equitable appropriation or division of the property, and impose upon the new corporation, or upon the people and territory thus disannexed, the obligation to pay an equitable proportion of the corporate debts. 1 Dillon, § 129, and note, p. 252.

VII. Appellee, by accepting the benefits of the act of the 11th March, 1875, thereby became liable for its burdens also (Low v. Conn. R. R., 45 N. H., 380; Episcopal Soc. v. Episcopal Ch., 1 Pick., 372; Bank of Columbia v. Patterson, 7 Cranch, 299; Raddall v. Van Vetchen, 19 Johns., 60; Sheldon v. Fairfax, 21 Vt., 102), and its promises and engagements may as well be implied from its acts, and the acts of its agents, as if it were an individual. Elysville Manuf'g Co. v. Okisco Co., 1 Md. Ch., 392; 1 Dillon, § 384.

VIII. A county has a right of action against a new county formed from its territory for the *pro rata* indebtedness of the detached territory of the debt of the old county; *aliter* as to creditors. Howard *v.* Horner, 11 Humph., 532. Whenever a corporation transcends its legislative powers, and performs illegal acts, the effects of which impose a burden upon the property of any other, an action lies. Christopher *v.* Mayor of N. Y., 13 Barb., 567. By legislative act, Bristol was transferred from Jackson county to La Crosse county, and was afterwards transferred back again. The taxes which in consequence of this legislation had been erroneously paid to the treasurer of La Crosse county, were by subsequent act directed to be paid to Jackson county. *Held,* that Jackson county had a right of action independent of the latter act, which did not enlarge the remedy previously existing for the collection of a claim due from a county, unless perhaps by giving a right to a *mandamus* to the treasurer. Jackson *v.* La Crosse, 13 Wis., 490.

IX. Equity will entertain jurisdiction against municipal corporations and their officers when acting *ultra vires*, or assuming or exercising a power over the property of the citizen, or over corporate property or funds, which the law does not confer upon them. 2 Dillon, § 736*a*, p. 836 and note. An issue as to *ultra vires* cannot be raised on general demurrer; must be by plea. 1 Dillon, § 831; 2 id., §§ 749, 755, 756. This plea cannot protect illegal corporate acts; a corporation cannot fail to comply with the terms of its charter, and then plead *ultra vires*. 2 Dillon, § 769 and note; 2 Wait's Act. and Def., p. 335.

X. A judgment against a county which directs that execution issue to enforce it, will be reversed. Pasch. Dig., 1050; Chicago *v.* Hasley, 25 Ill., 595.

*Davis & Sayles*, for appellee.

WATTS, J. COM. APP.— At the time of the passage of the act which gave rise to this controversy, neither Trinity nor Polk county could interpose any obstacle to the legislation. Nor could the latter refuse to accept the territory thereby attached, and assume municipal control over the same. The whole matter rested entirely with the law-making power of the state, which, for the purposes of government, could at will apportion the territory of the state into such political divisions as it willed, subject to the then constitutional limitations upon that power, and require of the people of such divisions the performance of public duties. These local political

divisions or counties being parts of the machinery of the state government, were subject to legislative control.    See Bass v. Fontleroy, 11 Tex., 698.

Mr. Cooley, in his work on Constitutional Limitations, p. 296, appropriately remarks: "Whether they assume those duties or exercise those powers, the people of the political divisions are not allowed the privilege of choice; the legislature assumes this division of the state to be essential in republican government, and the duties are imposed as a part of the proper and necessary burden which the citizen must bear in maintaining and perpetuating constitutional liberty."

So in detaching that portion of Trinity county described in the act, and in attaching the same to Polk county, the legislature assumed that it was expedient and for the general good.    It was not essential that either of these counties should consent to the proceeding, for the act was as effectual without as it could have been with such consent.

The legislature then had full power over the subject.    This, however, is not now the case.    Sec. 3, art. IX, of the constitution of 1876, provides that "No part of any existing county shall be detached from it and attached to another existing county until the proposition for such change shall have been submitted, in such manner as may be provided by law, to a vote of the electors of both counties, and shall have received a majority of those voting on the question in each."

This legislative control over the matter, without regard to the wishes of these two counties, is a consideration that should be borne in mind in construing and interpreting the act.

Appellant zealously urges the proposition that the latter clause of section 1 of the act is a proviso which in effect constitutes a condition precedent, and until performed Polk county could not rightfully assume municipal control over the attached territory; also that, as the proviso had not been complied with, it became absolute, and in that sense is repugnant to the body of the act, and in effect worked a repeal thereof.

It is not necessary in this case to enter upon that extensive field of legal learning concerning the effect of provisos to legislative acts, beset as it is with artificial rules and nice distinctions, a discussion of which could lead to no practical result.    For in our opinion the clause under consideration is not a proviso in that sense urged, but that it more nearly approaches a reservation, and must be construed as if the word "provided" had been omitted.    Its true

meaning and import, in our opinion, is the same as if it had been couched in this language: "And the citizens in said detached portion of Trinity county shall pay their *pro rata* portion of the county indebtedness up to the date of the passage of this act."

To assume that the clause is a proviso constituting a condition precedent, as claimed, would lead to confusion, and seemingly, at least, have the legislature to do a foolish thing. Under such a construction, the territory must in fact and in law remain a portion of Trinity county until that *pro rata* is paid. That could only be done by the levy of a tax by the county court of Trinity county, which under the constitution must be equal and uniform throughout the county. And so long as it remained a part of Trinity county, I apprehend that it would necessarily have to aid in defraying the current expenses of the county; for these citizens would hardly be allowed to share in the benefits without assuming some of the burdens of the county government. If, then, the people of Trinity county desired to retain this territory, this could be accomplished by so levying tax, and expending the money arising therefrom, that the existing debt would never be paid. In this way a solemn enactment of the legislature would be effectually annulled by the action of the county court of Trinity county; and whether or not it would ever be operative, in any event, is made to depend upon the action of that court. Such a result could not, in our opinion, have been intended by the legislature.

The true construction of the act is that the territory therein described became absolutely and unconditionally a part of Polk county upon the approval of the act; and that by the clause directly under consideration, a liability was sought to be retained against the citizens of that territory for their *pro rata* of the existing debt of Trinity county.

There is nothing in the proposition that appellee could not assume municipal control over the attached territory until the lines designated in the act had been run and defined. The several provisions of the statute, as well as decisions referred to by appellant as supporting that proposition, have reference solely to the creation and organization of new counties.

No controversy is shown to exist between the parties as to the true location of their lines, and the record shows no necessity for running and marking the same.

From these conclusions, it results that appellant cannot recover of appellee the territory described in the act, nor the amount of the taxes levied and collected by appellee upon the subject of taxation therein.

Then the question next in order to be considered and determined is as to the liability of Polk county to appellant for the *pro rata* of its existing debt, claimed to be owing by the citizens of the attached territory.

As was said by Chief Justice Parker in Hampshire *v.* Franklin, 16 Mass., 86, " By general principles of law, as well as by judicial construction of statutes, if a part of the territory and inhabitants of a town are separated from it by annexation to another or by the erection of a new corporation, the remaining part of the town or the former corporation retains all its property, powers, rights and privileges, and remains subject to all its obligations and duties, unless some express provision to the contrary should be made by the act authorizing the separation. The same principle will apply with equal force when a county is divided."

It is not necessary to consider or determine in this case, whether it would be within the constitutional power of the legislature to impose upon appellee, without its consent, a liability for a portion of the appellant's existing indebtedness; for an examination of the provisions of the act under consideration manifests no such intention upon the part of the legislature. The intent, as there disclosed, is to hold the citizens of that particular territory, and not Polk county, bound for a *pro rata* of appellant's existing indebtedness. This indebtedness was not created for the benefit of Polk county, and is in no sense the indebtedness of that county; no obligation whatever, either legal or moral, rests upon it to pay any portion of the same.

It is not perceived how the county court of Polk county could have legally levied and collected a tax from the citizens of that territory for the purpose of paying a portion of Trinity county's indebtedness. The power of that court, under then existing laws, to levy and collect taxes, was limited to specific purposes, such as defraying its own county expenses and paying its own county indebtedness. That court could not legally levy and collect a tax upon all or any portion of the citizens of the county for the purpose of paying the indebtedness of Trinity county, in the absence of express legislative authority, so given as to exempt these citizens from double taxation or unequal burdens. No such power, however, was conferred upon the county court of Polk county by this or any other legislative enactment.

We are clearly of the opinion that there was no cause of action against appellee asserted in the petition and amendment thereto; and that the court below correctly sustained the general demurrer to the petition and dismissed the case.

However, there is error in that part of the judgment which awards execution against appellant for costs of suit. The statute expressly provides that "No execution shall be issued on any judgment against any county." Pasch. Dig., art. 1050; R. S., art. 679.

We therefore report that the judgment in this particular ought to be reformed, and in all other respects affirmed.

JUDGMENT REFORMED.

[Opinion approved January 19, 1883.]