### WOOD v. STATE ex rel. LEE.

#### No. 5530.

Court of Civil Appeals of Texas.
Texarkana.

Oct. 12, 1938.

Rehearing Denied Oct. 27, 1938.

956

Hurst, Leak & Burk and Taylor & Storey, all of Longview, and Samuel C. Harris, of Gladewater, for appellant.

Oscar B. Jones, M. Neal Smith, and Wynne & Wynne, all of Longview, for appellee.

PER CURIAM.

On April 5, 1938, there was held an election in the City of Gladewater, Texas, for the purpose of electing a mayor and two city commissioners. Appellant Wood and appellee Lee were candidates for the office of mayor at said election. The city commission on April 12, 1938, canvassed the vote cast at said election and declared appellant the duly elected mayor of said city by a majority of fifty two votes. On May 3, 1938, this suit was instituted .in the nature of a quo warranto proceeding by the district attorney of Gregg County upon the relation of appellee, C. A. Lee, against appellant for the office of mayor. In appellee's petition it is alleged that appellant wrongfully and illegally holds the office of mayor by virtue of an untrue and illegal certificate issued by the city commission of Gladewater certifying that appellant received a majority of the votes cast at said election; that said certificate of election is untrue for the reason that the majority of the legal votes cast at said election were for appellee. It was alleged further that all absentee ballots, 208 in number, were illegal and void "as being cast without authority of law." Appellee alleged a conspiracy between certain police officers of the city and appellant, having for its purpose the wrongful election of appellant as mayor of said city; that "in furtherance of said conspiracy, before said election was held, they secured a voting machine, and in violation of the statute and without any statute authorizing it or arranging for such procedure, they herded the Negroes of Gladewater to the polls,· under solicitation, threats, fraud and compulsion by hauling them down in automobiles, telephoning for them, sending officers for them and coercing them to vote before election day, and, then to swear in court or before the grand jury and any investigating body that they had intended to be out of town upon said day." Appellee alleged further that if the illegal votes cast in said election were "thrown out" it would result in the election of appellee by more than 100 votes. Numerous other allegations were made by appellee detailing acts of fraud on the part of alleged conspirators, and numerous individual ballots .were challenged for different reasons not necessary to state in the view we take of this cause.

Appellant answered by general demurrer and numerous special exceptions and gen-

eral denial. Appellant specially denied that the absentee ballots cast at said election were illegal. That numerous votes cast for appellee are illegal for reasons specifically named, but which will not be necessary to mention as no proof was offered in support of said allegation. Appellant also pleaded estoppel on the part of appellee who was shown to be a commissioner of the City of Gladewater, because of his acting and participating in the issuance of the election certificate to appellant declaring him the duly elected mayor of the city of Gladewater.

Trial was to a jury. At the conclusion of the testimony both parties made motion for peremptory instruction. Appellant's motion was overruled and that of appellee was granted. Upon the verdict so rendered judgment was entered for appellee Lee for title to the office of mayor, and removing appellant from said office. Appellant immediately filed his supersedeas bond in the amount fixed by the court, and the cause is now before this court for review.

A controlling question in this case is stated by appellant in his fourth proposition, which is: "The city election, held pursuant to the Revised Civil Statutes on the First Tuesday in April for the election of Mayor and City Commissioners, being a general election electors were properly permitted to vote absentee votes by appearing before the City Secretary, making the proper application and affidavit for ballot within the time prescribed by law, to-wit, not more than twenty nor less than three days prior to the date of the election and cast their ballot for the candidate of their choice upon the voting machine provided for that purpose in counties which have adopted such voting machines."

The undisputed facts of this case reveal that some 208 persons voted before election day. One hundred and seventy-seven of this number voted for appellant and twenty-two voted for appellee. The great majority of these voters appeared before the City Secretary in the City Hall in Gladewater and each made an affidavit of which the following is typical:

"The State of Texas
"County of Gregg.

"I, Mrs. Howard Claborn, hereby make application for an official ballot to be voted by me in the general city election to be held in Gladewater, in the County of Gregg, State of Texas, on the 5th day of April, A. D. 1938, and I do solemnly swear that I am a resident of the said City and have resided in the State of Texas for one year and in said County and City for six months next preceding such election; that I am a duly qualified elector, entitled to vote in said election; *that I am expecting to be out of the City and because of the nature of my business expect to be absent from said City of Gladewater* and cannot appear at the polling place on said day of election.

"3–31–38

"Date.      (Signed) Mrs. Howard Claborn,
                    "Box 356
"508 Janet            P. O. Address.
"Residence

"Sworn to and subscribed before me this the 31st day of March, A. D. 1938.

            "H. I. McAfee,
            "City Secretary and for Gladewater, Texas, Gregg County, Texas."

(Italics ours.)

It is the contention of appellant that these votes were legally cast under authority of Vernon's Ann.Civ.St. Art. 2956, Sec. 3; that this court should read into Subdivision 1 of Art. 2956, the words "expects to be" in the place of the word "is". It is contended that this should be done in order to give effect to the entire absentee voting statute and the intent of the Legislature. This brings us to the discussion of the absentee voting statutes enacted by the Legislature from the inception of said law in 1917. The first absentee voting law was passed by the 35th Legislature in 1917 as S.B. No. 33, Chap. 40, p. 62, Acts 1st Called Session, amending R.S. 1911, Article 2939 and reads: "Any qualified elector as defined by the statutes of this state, who *expects to be absent* from the county of his residence, and at any other place in this State, on the day of his election may vote subject to the following conditions, to-wit:" (Then follows conditions under which said elector may vote.) The emergency clause in said bill in part is as follows: "The importance of this Act to the people of the State," etc. Section 2. This article was carried forward in the revision of 1925 as Article 2956 (its present number) and the classification of absentee voters in said revision is "any qualified elector, as defined by the laws of this State, who *expects to be absent* from the county of his or her

residence on the day of the election may vote subject to the following conditions." In 1931, Article 2956, R.C.S., was amended by H.B. No. 48, Chap. 105, p. 180, Regular Session, 42d Legislature, in several particulars, but the classification of absentee voters remained the same as in the 1925 codification and contained the words "who expects to be absent." The emergency clause in said bill recites that there are conflicting dates for holding elections, etc. In 1933, Article 2956 was amended by S. B. No. 93, Chap. 4, p. 5, Regular Session, 43d Legislature, in several particulars but the classification of absentee voters remained as in the 1925 revision and contained the words "who expects to be absent." The emergency clause of said bill reading in part, "the fact that under existing laws it is questionable whether absentee voting is permissible at special primary elections," etc. Section 2. In May, 1935, at the Regular Session of the 44th Legislature, c. 300, R.S. Article 2956 was again amended, subdivision 1 of said Act is: "Any qualified elector of this State *who through the nature* of his business is absent from the County of his residence, or who because of sickness or physical disability cannot appear at the poll place in the election precinct of his residence, on the day of holding any general or special or primary election, may, nevertheless, cause his vote to be cast at such election in the precinct of his residence by compliance with one or other of the methods hereinafter provided for absent voting."

Subdivision 2 of said Article as amended is:

"Application for Ballot to be Voted.
     "At the ——— Election
"On the ——— Day of ——— A. D. 19—.
"The State of ———
"County of ———

"I, ———, hereby make application for an official ballot to be voted by me at the ——— (general or special) ——— election to be held in Election Precinct No.——— of ——— County, Texas, on ——— (date of election) ———, and I do solemnly swear that I am a resident of said precinct, and have resided in the State of Texas for one year and in said County for six months next preceding such election; that I am a duly qualified elector entitled to vote at said election; and that I am ——— (here state business) ——— and because of the nature of my business expect to be absent from said County (or, because of my sickness or physical disability, cannot appear at the polling place in said precinct) on the said day of election.
"Date:———   Signed:———
"Residence:——— Post Office Address:———
 "Sworn to and subscribed before me this ——— day of ——— 19—.
      "———————
     "(Official designation)."

In November, 1935, at the Second Called Session, 44th Legislature, c. 437, R.S. Art. 2956 was amended again, Vernon's Ann. Civ.St. art. 2956. Subdivision 1 of said Article is: "Any qualified elector of this State who *is absent* from the county of his residence, or because of sickness or physical disability can not appear at the poll place in the election precinct of his residence, on the day of holding any general, special, or primary election, may, nevertheless, cause his vote to be cast at such an election in the precinct of his residence by compliance with one or other of the methods hereinafter provided for absentee voting." (All italics in above articles ours.)

The form of application set out above appearing in the May Amendment of Revised Statutes, 44th Legislature, is omitted from this later amendment, and subdivision 1, Art. 2956, copied last above constitutes the statute in force at this time, classifying absentee voters and governs the absentee voting at the election for mayor in the city of Gladewater. Subdivision 3 of the November amendment by the Second Called Session, 44th Legislature, Vernon's Ann.Civ.St. art. 2956, subd. 3, is: "At any time not more than twenty (20) days, nor less than three (3) days, prior to the date of such an election, such elector making his personal appearance before the county clerk of the county of his residence at his office and delivering to such clerk his application aforesaid, shall be entitled to receive from said clerk one official ballot which has been prepared in accordance with law for use in such election, which ballot is then and there, in the office of said clerk of said county, and in the presence of said clerk and of no other person, except the witness who is authorized to assist elector in certain cases as hereafter provided, to be marked by the elector, or by said witness in case of physical disability of elector, so as to conceal the marking, and same shall, in the presence of the

clerk, be deposited in a ballot envelope furnished by said clerk, which envelope shall bear upon the face thereof the name, official title, and post office address of such county clerk, and upon the other side a printed affidavit in substantially the following form, to be filled out and signed by the elector; provided, however, that in case of the physical disability of elector preventing him from filling out and signing such affidavit, then the witness who assisted the elector in marking his ballot shall fill out and sign affidavit for and in behalf of elector and shall also sign his, witness' name as prescribed in the following form: "State of ———

"County of ———

"I, ——— do solemnly swear that I am a Resident of Precinct No. ——— in ——— County, and am lawfully entitled to vote at the election to be held in said precinct on the ——— day of ——— 19———; that I am prevented from appearing at the polling place in said Precinct on the date of such election because of (illness), (physical disability), (or because of absence from County), ———, (elector to signify one of foregoing reasons) that the enclosed ballot expresses my wishes, independent of any dictation or undue persuasion of any person; that I did not use any memorandum or device to aid me in the marking of said ballot.

———————————————
Signature of elector.

"By ———————

"Name of witness who assisted elector in event of physical disability."

This subdivision with minor changes has been carried in all previous legislative enactments respecting absentee voting.

██ It is the contention of appellant that subdivisions 1 and 3 of Vernon's Ann. Civ.St. Article 2956, when construed together reveals the intention of the Legislature to permit absentee voting by any qualified voter who "expects to be absent" from the county of his residence. It is a rule of construction of legislative enactments first to ascertain the intent of the Legislature in passing a law and to give effect to such intention even though it requires supplying or omitting words. Trinity County v. Polk Co., 58 Tex. 321; Roby v. Hawthorne, Tex.Civ.App., 84 S.W. 2d 1108. Another rule of construction of a statute is that the intention of the Legislature in enacting same must, if possible, be ascertained from an examination of all

portions of the Act itself, keeping in mind "the evil to be remedied and the object to be accomplished" by its enactment. Cannon's Adm'r v. Vaughan, 12 Tex. 399; Magnolia Pet. Co. v. Walker, 125 Tex. 430, 83 S.W.2d 929; Gaddy v. First Natl. Bank, Tex.Civ.App., 283 S.W. 277 (approved by Supreme Court, 115 Tex. 393, 283 S.W. 472). Still another rule of construction is that effect must be given to all parts of an Act of the Legislature if it is possible to do so. Citizens' Nat. Bank of Hillsboro v. Graham, 117 Tex. 357, 4 S. W.2d 541; Cor.Jur.Vol. 59, page 995, Sec. 595. When the rule with respect to the intent of the Legislature in passing the present absentee voting statute is applied, it is our opinion that it conclusively shows that the Legislature by its deliberate act limited the electors who may vote absentee at an election to those *who are absent* on election day. The Legislature in May, 1935, at its Regular Session changed the classification of voters who may vote absentee from those *"who expect to be absent"* to those who *"through the nature of his business is absent from the county of his residence."* Again in November, 1935, Second Called Session, the Legislature changed the classification of absentee voters it had enacted in May to one *"who is absent."* To further show the intent of the Legislature the last amendment under subdivision 1, Sec. 3, sets out the reasons for enacting said amendment as follows: "The fact that absentee voting in many of the counties of Texas under existing laws has become a public scandal and that such laws are easily capable of evasion and abuse and have permitted the perpetration of gross frauds upon the electorate * * * create an emergency," etc. This emergency clause showed distinctly the temper of the Legislature in enacting the present classification of absentee voters. To strike down Subdivision 1 of Article 2956 would nullify the entire statute for the reason that this subdivision classifies those persons who may vote absentee. In our opinion, Subdivision 3 of Article 2956 relating to persons making their personal appearance before the county clerk and receiving a ballot and voting absentee is clearly in conflict with Subdivision 1 classifying absentee voters, and must of necessity fail. This is so because it is impossible for an elector as classified in Subdivision 1 of Article 2956 to comply with the requirements of Subdivision 3 of said article. Our conclusion in

960

this regard is based on the history of this legislation from its inception, together with the expressed intention of the Legislature as shown by its emergency clause in the amendment enacted at the Second Called Session, 44th Legislature, in November, 1935. The statute itself shows clearly the intention of the Legislature to limit absentee voting to those persons who are absent from the county of residence on election day. As said in Larkin v. Pruett Lbr. Co., Tex.Civ.App., 209 S.W. 443, 445: "It is, of course, the plain duty of the courts, in construing statutes, to give effect to the intent of the lawmaking power and seek for that intent in every legitimate way, but when the intention of the Legislature is so apparent from the face of the statute that there can be no question as to its meaning, there is no room for construction." Therefore, we conclude that the absentee votes cast at said election under authority of Subdivision 3, Article 2956, are void and should not have been counted.

The absentee votes cast at said election, in our opinion, are void for the further reason that they were cast on a voting machine, which, under the facts in this case, did not comply with Article 6, Section 4 of the Constitution of Texas, Vernon's Ann.Civ.St. art. 6, § 4, in that the ballots were not numbered. The voting machines described in the evidence, on which the absentee ballots here in question were cast, did not number or otherwise identify the ballots of the respective voters, nor was any means provided to determine by whom each ballot was cast. State ex rel. Barry v. Connor, 86 Tex. 133, 23 S.W. 1103. We do not say that a voting machine could not be constructed which would comply with the above constitutional requirement, but what we do say is that the voting machines described in the record do not, in our opinion, meet the requirement of article 6, section 4 of the Constitution of Texas. However, we pretermit further discussion of this phase of the case on account of the fact that this precise question is now before the Supreme Court of this State in certain habeas corpus proceedings resulting from the trial of this cause in the lower court.

All other propositions brought forward have been examined and are found without merit and are overruled.

The judgment of the trial court is affirmed.