A. J. (ARCHIE) WOOD V. STATE OF TEXAS EX REL. CLAUDE A. LEE.

No. 7510. Decided March 22, 1939.
Rehearing overruled April 19, 1939.
(126 S. W., 2d Series, 4.)

*Samuel C. Harris,* of Gladewater, and *Hurst, Leak & Burke,* of Longview, for plaintiff in error.

A city election, held pursuant to the statutes for mayor and city commissioners, being a general election electors were properly admitted to vote absentee votes by appearing before the city secretary, making the proper application and affidavit within the statutory time and casting their ballots for the candidate of their choice upon the voting machine provided for that purpose, in counties which have adopted such machines, and where a voter who expects to be absent on the day of the

election has so appeared and voted, and by reason of illness, business engagements or otherwise, is in said city on the day of the election, he is not thereby disfranchised, and his vote, cast as an absentee vote, is a lawful vote and entitled to be counted. Cannon v. Vaughan, 12 Texas 399; Magnolia Pet Co. v. Walker, 124 Texas, 125, 83 S. W. (2d) 929; 39 Tex. Jur. 208-212.

*Oscar B. Jones,* District Attorney of Gregg County, *Wynne & Wynne, Angus G. Wynne* and *Henry H. Harbour,* all of Longview, for defendants in error.

There being no provision in the statutes for the casting of absentee ballots by virtue of an affidavit that the person so voting said absentee ballot expected to be absent from the place of his residence on election day, said absentee ballots so cast by virtue of such affidavit are illegal, void and not entitled to be counted in the result of such election, and it further appearing that such persons were actually in the city on the day of the election, absentee ballots cast by such persons are illegal and void. Winder v. King, 1 S. W. (2d) 587; Vaugh v. Southwestern Surety Ins. Co., 109 Texas 298, 206 S. W. 920; Gilmore v. Waples, 108 Texas 167, 188 S. W. 1037.

*Wilson, Ogden & Reichman, Andrew Patton,* Criminal District Attorney, *E. G. Moseley,* Civil District Attorney, and *Harold McCracken,* Assistant District Attorney, all of Dallas, filed briefs as amici curiae.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This is a quo warranto action brought in the District Court of Gregg County, Texas, by the State of Texas upon relation of one Claude A. Lee against A. J. (Archie) Wood to try title to the office of Mayor of the City of Gladewater, in such county and state. It appears that Gladewater is a municipal corporation, duly incorporated under the general laws of this State. The election forming the basis of this action was held on the date provided by statute—April 5, 1938. At such election, Claude A. Lee and A. J. Wood were opposing candidates for the office of Mayor. On the face of the election returns, Wood received 871 votes and Lee 819. Wood was declared elected, and as we understand this record, now has possession of the office, and is exercising its functions and duties. After the returns of the election were announced, and the result declared, as shown above, this action was instituted by the State upon

relation of Lee to remove Wood from the office in question, and install Lee therein. Trial in the district court was had with the aid of a jury. At the close of the testimony all parties moved for an instructed verdict. Wood's motion was overruled, and that of the State and Lee granted. The jury returned the verdict directed, and judgment was entered removing Wood from the office of Mayor, and installing Lee therein. Wood, in due time, filed a supersedeas bond, and perfected appeal to the Court of Civil Appeals at Texarkana. On final hearing in that court, the judgment of the district court was affirmed. 120 S. W. (2d) 955. The case is before the Supreme Court on writ of error granted on aplication of Wood.

It appears from the record before us that Wood was in possession of the office of Mayor at the time this case was tried in the district court. Furthermore, Wood held a certificate showing that he had been elected at the election in question. If no election was held on said date, Lee cannot be seated, because he was not elected. On the other hand, as above shown, Wood was declared elected over Lee by the proper authority. It must follow that if an election was held, Wood cannot be unseated, and Lee seated, unless it appears that Lee received a majority of the legal votes cast. In this case a peremptory charge for Lee was given, and therefore, if this judgment seating Lee is to be sustained, it must appear conclusively that Lee received a majority of the legal votes.

If we understand this record, the votes voted thereat were as follows:

| | |
|---|---:|
| Absentee ballots voted for Wood on voting machine by voters | 177 |
| Absentee ballots voted for Wood mailed in | 5 |
| Absentee ballots voted for Wood by invalids | 3 |
| Ballots voted for Wood on election day, all on machine by voters | 686 |
| Total | 871 |
| Absentee ballots voted for Lee on voting machine by voters | 22 |
| Absentee ballots voted for Lee, mailed in | 1 |
| Absentee ballots voted for Lee by invalids | 5 |
| Ballots voted for Lee on election day, all on machine by voters | 791 |
| Total | 819 |

As shown above, all votes voted at this election, absentee

as well as those voted on election day, were voted directly on a voting machine by the voters, except 14, who voted either by mail or as invalids. We take it that these 14 votes were ultimately registered on the voting machine as provided by Section 6 of Article 3022-a, 1938 Cumulative Annual Pocket Part to Vernon's R. C. S. 1925. Thus, as we understand this record, all votes cast at this election were voted on a voting machine.

■ The Court of Civil Appeals holds that the voting machine on which the absentee ballots were voted was unconstitutional and void, because such voting machine was in violation of Section 4 of Article 6 of our State Constitution. We are at a loss to understand how the constitutionality of the voting machine in question can aid or comfort Lee in this appeal. If the voting machine used for absentee voting was void, and the votes cast thereon therefore also void, the same is true of all other votes cast at such election, because they were also cast or voted on the same kind or character of a voting machine. If all votes were void, no election at all was held, and Lee cannot be seated.

We find that Article 2956, which is our absentee voting statute, and which we shall later discuss, makes no direct mention of absentee voting in city elections. However, Articles 2931 and 2997, R. C. S. 1925, respectively, provide:

"Art. 2931. All provisions of this title which prescribe qualifications for voting and which regulate the holding of elections shall apply to elections in cities and towns. * * * *"

"Art. 2997. * * * * In all elections in incorporated cities, towns and villages, the mayor, the city clerk, or the governing body shall do and perform each act in other elections required to be done and performed respectively by the county judge, the county clerk, or the commissioners' court."

■ We think the above Articles have effect to make the absentee voting provisions of Article 2956 applicable to cities incorporated under general law. Also, chapter 52, H. B. 121, Acts of 2nd Called Session, 45th Legislature, p. 1957, amending Section 7 of Article 2997a, expressly authorizes cities to use voting machines in voting absentee ballots. From all of these statutes, we think it is clear that absentee voting is provided for in city elections. We think further that in permitting absentee voting in city elections the provisions of our general statutes on the subject should be followed as near as practicable. Yett v. Cook, 115 Texas 205, 281 S. W. 837.

If we properly interpret its opinion, the Court of Civil Ap-

peals holds that our present absentee voting statutes limit electors or voters who may vote absentee to voters who are actually absent on election day, and does not permit such absentee voting by electors or voters who merely expect to be absent. Stated in another way, the Court of Civil Appeals holds that if a voter expects to be absent on election day, and therefore complies with the absentee voting statutes so as to cause his vote to be cast as an absentee vote on election day, such vote, if so cast, will be illegal and should not be counted, unless such voter is actually absent on such election day. We are unable to agree with this ruling for reasons which we will now proceed to give.

Our present absentee voting law, Subdivision 1, Article 2956, R. C. S., as amended, provides:

"Any qualified elector of this State who is absent from the county of his residence * * * on the day of holding of any general, special, or primary election, may, nevertheless, cause his vote to be cast at such an election in the precinct of his residence by compliance with one or the other of the methods hereinafter provided for absentee voting."

It will be noted that the above statute uses the present tense. In other words, under the letter of the statute, an absentee vote seems not to be provided for unless the person so voting is actually absent on election day. We shall not attempt to trace in full detail the history of this statute. The Court of Civil Appeals has done so, and we refer to that opinion for such history. Our first absentee voting statute was enacted in 1917 by the 35th Legislature. By the terms of that statute, electors who expected to be absent on election day could cause their ballots to be cast on election day. This Act was codified as Article 2956 of our R. C. S. 1925. The codification carried the phrase "expects to be absent." Article 2956 was amended twice with the phrase "expects to be absent" contained therein. The 44th Legislature, 1935, amended this statute so as to read: "who through the nature of his business is absent." It is thus seen that for the first time the Legislature in 1935 eliminated the phrase "expects to be absent," and substituted therefor the phrase "is absent." Again in 1935 the 44th Legislature amended Article 2956, as amended, and in such statute the phrase "is absent," and not the phrase "expects to be absent," is used. This last-mentioned Act is the one now in force. The Court of Civil Appeals very forcibly reasons that since the Legislature has seen fit, by amendment, to change the phrase "expects to be absent" to the phrase "is absent," effect should be given

to such change. In our opinion, the present statute should be given the same construction, as regards the matter under discussion, as the several statutes which existed prior to the time the phrase "expects to be absent" was eliminated, and the phrase "is absent" substituted. We reach this conclusion for two main reasons; (a) because to give the statute the construction that though the voter expects to be absent, still if he is not actually absent, his vote should not be counted, leads to results that are unreasonable, and makes the law largely impracticable and unworkable; and (b) because in our opinion such a construction contradicts the Act when read as a whole.

■ It is the settled law that statutes should be construed so as to carry out the legislative intent, and when such intent is once ascertained, it should be given effect, even though the literal meaning of the words used therein is not followed. Also, statutes should never be given a construction that leads to uncertainty, injustice, or confusion, if it is possible to construe them otherwise. 39 Tex. Jur., p. 176 et seq., and authorities there cited. If this Act be given the construction that intent or expectation of the voter does not govern, then utter confusion and uncertainty must exist in holding all elections. Election officers will be put to the duty of ascertaining whether or not electors whose absentee ballots have been transmitted to them in the proper way are, in fact, actually absent, before such officers will be justified in counting such ballots. At least, such election officers will be put to such duty in case such ballots are challenged on that ground. Such duty would call on election officers to try and determine fact cases in numerous instances. Furthermore, to construe this statute to mean that the voter who expects to be absent must actually be absent on election day, would lead to much litigation and many election contests. Every absentee vote would be the subject of much uncertainty, and every election contest would involve the issue of finding out whether or not each absentee voter was, in fact, absent on election day, and this though the voter should otherwise be duly qualified. We think that a construction that leads to such confusion should not be indulged in, unless there is no escape therefrom.

■ As to our conclusion that Article 2956, as amended, should not be given the construction that a ballot voted absentee is illegal if the voter is not actually absent on election day, because such a construction contradicts the Act as a whole, and contradicts other parts thereof, we call attention to the following facts: No where in the Act is it so provided, but the

opposite is in effect provided. Subdivision 5 of this Article makes it the duty of the county clerk, when he receives an absentee ballot, to keep the same unopened until the second day prior to the election. It is then made his duty to enclose the ballot with the elector's application therefor in an envelope, securely sealed, etc., and mail or deliver the same to the proper presiding or assistant election judge. Subdivision 6 of this Article provides that on the day of the election one of the judges shall, between the hours of two and three o'clock, open the envelope, announce the elector's name, and compare the signature upon the application with the signature upon the affidavit on the ballot envelope. It is then provided that in case the election board finds the affidavit duly executed, that the signatures correspond, that the applicant is a duly qualified voter of the precinct, and that he has not voted in person at such election, they shall open the envelope containing the elector's ballot, take out the ballot, etc., and deposit the same in the ballot box. It will be noted that Subdivision 6, supra, goes into great detail in prescribing how the matter of absentee ballots shall be handled by the election officers on election day. It is tremendously significant that the statute expressly provides, in substance, that in case the person whose absentee ballot is tendered for deposit in the ballot box has not voted in person, such ballot shall be so deposited. The Legislature was careful to make it the duty of the election officers to ascertain whether or not the voter had voted in person. In fact, the Legislature was very careful to lay down all the conditions which must exist before the absentee ballot is deposited in the ballot box. No where in Subdivision 6 is it even hinted that actual presence in the county on election day will justify the election judges in refusing to deposit the absentee ballot in the ballot box. The statute merely says that the election judges, among other things, shall ascertain if the absentee voter has voted in person. When we come to consider Subdivision 7 of this Article, it is noted that it expressly provides that if the officers of the election shall ascertain that the person whose ballot has been marked and forwarded, as provided by the statutes under discussion, has died, then the ballot shall not be deposited in the ballot box. Here again, nothing is said about the voter being actually absent on election day. Boiled down, subdivisions 6 and 7 of Article 2956 make it the affirmative duty of election officers to deposit the absentee ballot in the ballot box if it appears from the papers before them that the voter has complied with the absentee voting statute. Two exceptions are made to this requirement; one, if the voter has

voted in person; and the other, if the voter has died. Certainly it ought to be held that a ballot which the election officers are compelled to deposit in the ballot box is a legal ballot, and conversely it ought not be held that the election officers must deposit an illegal ballot in the ballot box.

■ The Court of Civil Appeals holds that the voting machine used in this election for voting absentee ballots was unconstitutional and void, because in contravention of Section 4, Article 6, of our Constitution. We have already stated that the ballots voted on election day were also voted on a like machine. We think we have demonstrated that if such is true, Lee is not aided, and we would be compelled to reverse the judgments of the two lower courts. However, since we do not agree with the holding of the Court of Civil Appeals in regard to this matter, and in view of the fact that this case must be reversed and remanded, we find it necessary, in view of another trial, to decide the constitutionality of these voting machines. The constitutional provision in question reads as follows:

"Sec. 4. In all elections by the people the vote shall be by ballot and the Legislature shall provide for the numbering of tickets and make such other regulations as may be necessary to detect and punish fraud and preserve the purity of the ballot box and the Legislature may provide by law for the registration of all voters in all cities containing a population of ten thousand inhabitants or more."

It will be noted that the constitutional provision just quoted in effect contains four distinct provisions. The first two of these provisions are mandatory. The four provisions referred to are as follows:

1. It requires that in all elections by the people the vote shall be by ballot.

2. It requires that in all elections by the people the tickets shall be numbered.

3. It provides that the Legislature shall make such other regulations as may be necessary to detect and punish fraud and preserve the purity of the ballot box.

4. It provides that the Legislature may provide, by law, for the registration of voters in all cities containing a population of ten thousand inhabitants or more.

Unless the machine in question here violates one or more of the above provisions, it is a constitutional machine. We shall now proceed to decide that question.

The first requirement of the above constitutional provision is that in all elections by the people the vote shall be by ballot. We think that this provision simply means that the voter in all elections shall be accorded a secret vote or ballot. Webster's New International Dictionary; Carroll v. The State (Tex. Cr. App.), 61 S. W. (2d) 1005; 8 C. J. S., p. 38; It is conclusive that this machine accords a secret ballot. It is therefore not unconstitutional on that score.

■ The second requirement of this constitutional provision is that the tickets shall be numbered. The word "shall" is used in this requirement, just as it is used in the first one above discussed. In both instances, we think the term is mandatory, and not merely permissive. It will be noted that the word "ticket" is used. It is provided that the tickets shall be numbered. Of course, the word "ticket," as here used, means the same as the word "ballot." The ballot must be numbered. If we understand this record, the election officers kept a poll list which showed the name and number of each voter. When the voter registered his vote on the machine, it (the machine) recorded the number of the ballot. To our minds, this meets the requirement of the Constitution. As we understand this machine, it is not possible from the record made by it to determine, in an election contest, how each voter voted. Be that as it may, the Constitution contains no such requirement. The Constitution simply requires that the ticket shall be numbered. The machine does that.

■ The third provision of the above-mentioned constitutional amendment is that the Legislature shall make such other regulations as may be necessary to detect and punish fraud, and preserve the purity of the ballot. This constitutional provision is addressed to the sound discretion of the Legislature. It is not for the courts to attempt to direct what laws the Legislature shall enact to comply with it.

The fourth provision refers to the registration of voters in certain cities. It has nothing to do with this case.

At this point, we call attention to the various provisions of Article 2997-a, as amended. This Article is contained in chapter 33, Acts 41st Legislature, 4th Called Session, 1930, and chapter 52, Acts 41st Legislature, 2nd Called Session, 1937. Also, we call attention to Section 6 of Article 3022-a, 1938, Cumulative Pocket Part, Vernon's R. C. S. 1925. The Article is chapter 225, Acts 43rd Legislature, 1933.

■ From all that we have said, it is evident that we hold that it was competent and lawful for the City of Gladewater to conduct this election by using these voting machines. It is also evident that we hold that the votes of those who voted absentee should not be rejected merely because such voters were not actually absent on election day.

■ As we understand this record, the voting machines used in this election recorded the total number of votes for each candidate for Mayor, but did not make a record showing which candidate each voter voted for. It is therefore evident that the testimony in this regard must come from some other source. We think that one of the ways to ascertain how a voter voted, where a machine like this has been used, is to put such voter on the witness stand, and ask him the question. He can answer disclosing how he voted, if he so chooses. That is a matter the voter himself can control. On the other hand, the Constitution guarantees each voter a secret ballot; consequently he can decline to reveal how he voted, if he so chooses. At any rate, if the voter answers purporting to tell how he voted, his credibility is for the jury to pass on, if the case is being tried before a jury. If the voter who has been placed on the witness stand refused to divulge how he voted, such refusal is no evidence in the case one way or the other.

We do not deem it necessary to discuss in detail all the evidence heard at this trial. It is sufficient to say that, with the law questions disposed of as we have disposed of them, the record before us will not justify the peremptory charge given by the trial court.

The judgments of the Court of Civil Appeals and the District Court are both reversed, and the cause is remanded to the District Court.

Opinion delivered March 22, 1939.

Rehearing overruled April 19, 1939.