

# THE ATTORNEY GENERAL

# OF TEXAS

## AUSTIN 11, TEXAS

**PRICE DANIEL**

ATTORNEY GENERAL

May 8, 1951

Hon. A. M. Aikin, Jr., Chairman
Senate Committee on Education
52nd Legislature
Austin, Texas

Opinion No. V-1173

Re: Effect of Senate Bill 250,
apportioning the State into
twenty-two Congressional
Districts, upon the compo-
sition of the twenty-one
member State Board of Edu-
cation.

Dear Senator:

We refer to your request for an opinion of this office con-
cerning the effect of proposed Senate Bill 250 of the 52nd Legisla-
ture, apportioning the State into twenty-two Congressional Districts,
upon the composition of the twenty-one member State Board of Educa-
tion.

The proposed legislation, Senate Bill 250, provides for
twenty-two Congressional Districts, and the caption of that bill reads
as follows:

"An Act to apportion the State of Texas into Congres-
sional Districts, naming the Counties composing the same,
and providing for the election of a member of the Congress
of the United States from each district, repealing all laws
and parts of laws in conflict herewith, and declaring an •
emergency."

Section 8 of Article VII, Constitution of Texas, provides
in part:

"The Legislature shall provide by law for a State
Board of Education, whose members shall be appointed or
elected in such manner and by such authority and shall
serve for such terms as the Legislature shall prescribe
not to exceed six years. . . ."

There is no provision in the Texas Constitution which re-
lates to the method by which members for a State Board of Education
shall be appointed or elected, nor which fixes the number of members
which shall constitute that board. Section 8 of Article VII, supra,
leaves these matters entirely with the Legislature.

Pursuant to the above constitutional mandate, the 51st Legislature enacted Senate Bill 115, creating an elective State Board of Education. S.B. 115, Acts 51st Leg., R.S. 1949, ch. 299, p. 537.

Section 1 of Article II of Senate Bill 115, supra, originally provided:

"There is hereby created the State Board of Education, to consist of twenty-one (21) members. One member of the State Board of Education shall be elected from each of the twenty-one (21) Congressional Districts of the State of Texas as they now exist and as they shall be changed from time to time." (Emphasis added.)

However, Article II of Senate Bill 115 was subsequently amended by the same Legislature in House Bill 964, Acts 51st Leg., R.S. 1949, ch. 546, p. 1056, codified in Vernon's Civil Statutes under Article 2654-2. The caption of House Bill 964 reads in part as follows:

"An Act . . . creating the State Board of Education and dividing the State into Educational Districts for the purpose of selecting members thereof; . . ."

Article 2654-2, V.C.S. (H.B. 964, supra), provides in part:

"Section 1. There is hereby created the State Board of Education, to consist of twenty-one (21) members. One (1) member of the State Board of Education shall be elected from each of the twenty-one (21) Congressional Districts of the State of Texas."

"Sec. 2. A special election shall be held in each of the twenty-one (21) Congressional Districts of the State of Texas on the second Tuesday in November, 1949, for the purpose of electing the initial members of the State Board of Education, such members so elected at such election to hold office until January 1, 1951, . . ."

"Sec. 5. At the general election in 1950 there shall be elected, in conformity with the general election laws of this State, from each of the Congressional Districts, one (1) member of the State Board of Education. The members of said Board elected at said election in 1950 in Districts 1, 2, 3, 4, 5, 6, and 7 shall serve for a term of two (2) years beginning January 1, 1951; the members of said Board elected at said election in 1950 in Districts 8, 9, 10, 11, 12, 13, and 14 shall serve for a term of four (4) years beginning January 1, 1951; and the members of said Board elected at

said election in 1950 in Districts 15, 16, 17, 18, 19, 20, and 21 shall serve for a term of six (6) years beginning January 1, 1951. At the general election in 1952 and at each general election thereafter, members shall be elected, in conformity with the general election laws of this State, to the Board offices which will become vacant on December 31 of that year. The members thus elected shall hold office for a term of six (6) years, beginning January 1 immediately following such election."

"Sec. 6. In case of resignation or death of a member of said Board, or in case a position . . . otherwise becomes vacant, the Board shall fill such vacancy . . . by appointment of a qualified person from the affected district, . . . and, at the next general election after any such vacancies occur, members on said Board from the affected districts shall be elected . . . to fill such vacated offices for such unexpired terms. .... ."

"Sec. 9. . . . No person shall be eligible to serve on said Board or be elected thereto unless he shall be . . . a qualified elector of his district, . . ."

It is settled law that statutes will be construed so as to carry out the legislative intent. 2 Sutherland, Statutory Construction (3rd Ed. 1943) 333, Sec. 4701. When such intent is once ascertained, it will be given effect even though the literal meaning of the words used therein is not followed. Wood v. State, 133 Tex. 110, 126 S.W.2d 4 (1939); Longoria v. State, 126 Tex.Crim. 362, 71 S.W.2d 268 (1934); Trimmier v. Carlton, 116 Tex. 572, 296 S.W. 1070 (1927); Hidalgo County Drainage Dist. No. 1 v. Davidson, 102 Tex. 539, 120 S.W. 849 (1909).

Furthermore, it is a well established rule of statutory construction that the Legislature is presumed to have intended that which is reasonable and effectual rather than that which is productive of absurd or anomalous consequences. Statutes should never be given a construction that leads to uncertainty, injustice, or confusion if it is possible to construe them otherwise. 39 Tex. Jur. 222, 246, Statutes, Secs. 118, 131; 39 Tex. Jur. 176-184, Statutes, Secs. 93, 95, 96.

Highly significant in the ascertainment of legislative intent herein is the fact that the clause "as they now exist and as they shall be changed from time to time" is absent in House Bill 964, the amendment of Section 1 of Article II of Senate Bill 115. By its act of expunging these words from the original act by the amendatory law, the Legislature thereby definitely fixed the number of members

to be elected and serve on such board at twenty-one. This it had authority to do under Section 8 of Article VII, Constitution of Texas.

Additional evidence of legislative intent is present in the above quoted portion of the caption of the amendatory House Bill 964, supra, wherein it expressly provides for "dividing the State into Educational Districts for the purpose of selecting members" on the elective State Board of Education created therein. In construing a statute, a court is not restricted to its body. 39 Tex. Jur. 226, Statutes, Sec. 121. The caption, when considered with Section 1 of the body of the act, as it may be in the determination of ambiguities and in arriving at legislative intent, indicates that the intention of the Legislature was to adopt, for the purpose of "Educational Districts," the same areas previously established and recognized as Congressional Districts in Article 197, V.C.S. Westervelt v. Yates, 145 Tex. 38, 194 S.W.2d 395 (1946). Thus, the Legislature accomplished the purpose expressed in the caption, "to divide the State into Educational Districts," in Section 1 of its bill by reference to and adoption of the then established confines of Congressional Districts.

In Trimmier v. Carlton, 116 Tex. 572, 296 S.W. 1070, 1074 (1927), the court stated:

"Statutes which refer to other statutes and make them applicable to the subject of legislation are called 'reference statutes,' and are a familiar and valid mode of legislation. The general rule is that when a statute is adopted by a specific descriptive reference, the adoption takes the statute as it exists at that time, and the subsequent amendment thereof would not be within the terms of the adopting act."

See also Cameron v. Waco, 8 S.W.2d 249 (Tex.Civ.App. 1928); 39 Tex. Jur. 129, Statutes, Sec. 66.

By the expediency of reference, the Legislature thereby relieved itself of defining verbatim within House Bill 964 the boundaries or composition of the twenty-one "Educational Districts" created therein. Identification of such educational districts will always be available in the official publication of the State laws under Senate Bill 195, Acts 43rd Leg., R.S. 1933, ch. 135, p. 344, regardless of a repeal or amendment of that law for Congressional District purposes only.

For yet another reason we think House Bill 964 must be construed in the manner expressed herein. It was reasonable to contemplate at the time House Bill 964 was enacted that the State might become entitled to more or less than twenty-one Congressmen and that the Congressional Districts would be increased or diminished to create

newly defined districts. To construe "Educational Districts" to be co-terminous with Congressional Districts as changed from time to time would be to construe the law in violation of that provision in House Bill 964 which provides that the State Board of Education shall consist of twenty-one members. It is reasonable to assume that the Legislature had no intention of producing such a conflict. Or, if perchance a twenty-second Congressional District were lawfully created, the qualified voters in such twenty-second Congressional District might have no representation on the State Board of Education. This would be construing a law so as to disfranchise part of the voters when the clear intent of House Bill 964 was for the enfranchisement of all qualified voters of this State. Statutes should not be construed to disfranchise voters when they reasonably may be construed otherwise. Thomas v. Groebl, 147 Tex. 70, 212 S.W.2d 625 (1948). If the act had so intended, it would have been unconstitutional. Smith v. Patterson, 111 Tex. 535, 242 S.W. 749 (1922). We find no evidence of such an intention in House Bill 964.

An examination of the caption and body of proposed Senate Bill 250 of the 52nd Legislature reveals that its sole expressed purpose is to reapportion the State of Texas into Congressional Districts, naming the counties composing them. Since it is our opinion that there has been created by House Bill 964 educational districts as distinguished from Congressional Districts, it would necessarily follow that proposed Senate Bill 250, if passed, could have no effect to change the composition of the educational districts as established in House Bill 964, nor to change the composition of the twenty-one member State Board of Education.

### SUMMARY

Proposed Senate Bill 250 of the 52nd Legislature, apportioning the State into twenty-two Congressional Districts, would have no effect upon the composition of the twenty-one member State Board of Education. House Bill 964, Acts 51st Leg., R.S. 1949, ch. 546, p. 1056; Art. 2654-2, V.C.S.

APPROVED:

J.C. Davis, Jr.
County Affairs Division

E. Jacobson
Reviewing Assistant

Charles D. Mathews
First Assistant

CEO:mw:pwb

Yours very truly,

PRICE DANIEL
Attorney General

By
Chester E. Ollison
Assistant