

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

December 7, 1961

Mr. William J. Murray, Jr
Chairman, Railroad Commis-
sion of Texas
Tribune Building
Austin, Texas

OPINION NO. WW 1217

Re: What constitutes sufficient
compliance with Article 1440,
V.C.S. and Article 1054 V.P.C.
requiring the payment of
interest on utility customer's
deposits.

Dear Mr. Murray:

You have requested that this office reconsider a
letter opinion written to Honorable W. S. Bussey, Chief Weights
and Measures Division, Department of Agriculture, dated March
26, 1936 and filed in Book 370 at page 937, in our opinion
files. That opinion held that Article 1054 of the Penal Code
made it mandatory for private utilities to pay the prescribed
six per cent per annum interest on meter deposits on the first
day of January, of each year when service is not discontinued
sooner, whether demanded by the depositor or not, and that
payment upon demand did not satisfy the requirements of the
statute.

Article 1054 of Vernon's Penal Code contains the
identical language set forth in its companion civil statute,
which is Article 1440 Vernon's Civil Statutes, except for
the addition of the last sentence containing penal provisions.
Article 1440 is as follows:

"Every person, firm, company, corporation,
receiver, or trustee engaged in the fur-
nishing of water, light, gas or telephone
service which *requires the payment on the
part of the user of such service a deposit
of money as a condition precedent to furnish-
ing such service, shall pay six per cent per
annum on such deposit to the one making the
same, or to his heirs or assigns, from the
time of such deposit, the same to be paid
on the first day of January of each year, or
sooner if such service be discontinued.*
When such service is discontinued, such
deposit, together with any unpaid interest
thereon, or such part of such deposit and

> unpaid interest not consumed in bills due
> for such service, shall be returned to
> such depositor, his heirs or legal repre-
> sentatives."

As you point out in your request, the 1936 letter opinion referred to above applied a strict and literal interpretation of the statute in order to reach the ruling made.

In order to determine the true sense of the Legislature, we think it is helpful to quote the emergency clause of the original statute before its codification in 1925, which was Section 6 of House Bill 86, 38th Legislature:

> "Sec. 6. The fact that great sums of money
> are now held by the water, gas, light and
> telephone companies in this State under
> deposits and no interest is being paid there-
> on and many failures are being recorded on
> the part of such water, gas, light and telephone
> companies and no protection is given for said
> depositors for the deposits so made by them
> respectively, and the State and counties are in
> great need of more revenue to properly maintain
> State Government and the crowded condition
> of the calendar creates an emergency and impera-
> tive public necessity, requiring that constitu-
> tional rule providing that bills shall be read
> on three days be suspended and the same is
> hereby suspended and that this Act shall take
> effect and be in force from and after its
> passage, and it is so enacted." (Emphasis added)

From the foregoing, it is apparent that the primary concern of the Legislature was the fact that such deposits were not earning interest prior to the passage of the Act, and that during that period, many failures of such companies were occurring with no protection being afforded the depositors.

A strict and literal interpretation of Article 1054 and Article 1440 would require that all such companies either seek out their depositors and tender payment on the first day of January of each year or that the depositors actually appear at the companies' offices on New Year's Day.

New Year's Day is a holiday, and many persons are away from the cities of their residence on that day. If

payments were to be mailed they would not be delivered on New Year's Day, for this is a holiday for postal employees.  It is therefore clear that a strict and literal interpretation of these laws would require something impossible of performance.  We do not believe that the legislature so intended.

Sutherland on Statutory Construction at Section 4706 gives the rule to be applied here:

> "The literal interpretation of words of an Act should not prevail if it creates a result contrary to the apparent intention of the Legislature and if words are sufficiently flexible to admit of a construction which will effectuate the legislative intention. The intention prevails over the letter, and the letter must if possible be read so as to conform to the spirit of the Act.  'While the intention of the Legislature must be ascertained from the words used to express it, the manifest reason and obvious purport of the law should not be sacrificed to a literal interpretation of such words.'"

In Wood v. State, 133 Tex. 110, 126 S.W. 2d 4 (1939), the Supreme Court of Texas said:

> "It is the settled law that statutes should be construed so as to carry out the legislative intent, and when such intent is once ascertained, it should be given effect, even though literal meaning of the words used therein is not followed.  Also, statutes should never be given a construction that leads to uncertainty, injustice, or confusion, if it is possible to construe them otherwise."

The case of Commonwealth vs. Kentucky Power and Light Company, 77 S.W. 2d 395, (Ky. Ct. App. 1934) which involved a somewhat analogous statute, has been called to our attention, and is cited for the proposition that the Texas statutes are satisfied when interest is paid upon demand only.

It is therefore necessary to examine the Kentucky law construed in Commonwealth vs. Kentucky Power and Light Company, supra, and compare its wording with the Texas statutes.  The Kentucky law there construed is codified as Sections 2223-1, 2223-2, Ky. St. Supp., 1933, and is quoted below:

Mr. William J. Murray, Jr., page 4   (WW 1217)

> "An Act to require a public utility to pay
> interest at the rate of six (6) per cent
> annually on the amounts they exact as de-
> posits as security for the payment of gas,
> electric and water accounts.
>
> "Be it enacted by the General Assembly of
> the Commonwealth of Kentucky:
>
> "Sec. 1. That public utilities, such as gas,
> electric and water companies shall be re-
> quired to pay holders of certificates of
> deposits six (6) per cent annually on amounts
> exacted from patrons for gas, electric and
> water accounts.
>
> "Sec. 2.  Failure to comply with the above
> Section shall subject the Utility Company
> violating said provisions to indictment and
> prosecution and upon conviction to a fine
> of not less than One Hundred ($100.00) Dollars
> for each offense."

The Kentucky court treated the obligation to pay annually as being analogous to a demand note, and held that it was not necessary for the company to seek out its depositors each year and thrust upon them an interest payment.

It should be noted, however, that the Kentucky law did not contain the specific directive that payment be made each year. For this reason, the Kentucky case is not in point.

In this reconsideration of Letter Opinion of March 26, 1936, referred to above, we have limited outselves to the first two questions answered.  Those two answers and any other opinion in conflict herewith are expressly overruled and it is the opinion of this office that interest is to be paid annually whether demanded by the depositor or not and that it is not mandatory upon the persons, firms, etc., requiring service deposits, to pay the prescribed six per cent interest on the first day of January of each year.

We hold that payment may be made after the first day of January of each year on some date reasonably close to the first day of January and upon a regular business day.

## S U M M A R Y

Interest is to be paid annually whether demanded by the depositor or not. It is not mandatory that the persons, firms, etc., requiring service deposits, pay the prescribed six per cent interest on the first day of January of each year. Such payments may be made upon a business day reasonably close to the first day of January. To the extent of its conflict with this opinion, Letter opinion to Hon. W. S. Bussey, Chief Weights and Measures Division, Department of Agriculture, dated March 26, 1936, filed in Book 370 at page 937. Attorney General's Opinion files and other opinions in conflict herewith, are overruled.

Very truly yours

WILL WILSON
Attorney General

By: Houghton Brownlee, Jr
Assistant

HB/fb

APPROVED:

OPINION COMMITTEE

Henry Braswell, Chairman
J. C. Davis
Vernon Teofan
Pat Bailey
Ben Harrison

REVIEWED FOR THE ATTORNEY GENERAL

By: Leonard Passmore