

# THE ATTORNEY GENERAL
# OF TEXAS

WAGGONER CARR
ATTORNEY GENERAL

AUSTIN 11, TEXAS

February 11, 1964

*modifies C-*

Honorable H. L. Bengtson
Deputy Banking Commissioner
Department of Banking
John H. Reagan State Office Bldg.
Austin, Texas

Opinion No. C-215

Re: Reconsideration of C-187,
concerning whether a ceme-
tery association may make
prepayments into its per-
petual care trust fund.

Dear Mr. Bengtson:

Your request for an opinion asks the following ques-
tions:

"1. May the stockholders of a ceme-
tery association prepay funds into its
Perpetual Care Trust Fund, either in ad-
vance of sales or during the life of a
time-payment contract rather than at the
time final payment is made?

"2. If your answer to the foregoing
question is 'Yes', then where such a
surplus to a Perpetual Care Fund exists
from such payments, may credit be taken
against such surplus from the sales of
property entitled to perpetual care until
the surplus has been depleted?

"3. Are contributions or donations re-
ceived from the stockholders of a cemetery
association over and above legal require-
ments to be considered in the same light
as contributions or donations from third
parties under the provisions of 912a-18,
V.C.S.?"

In response to these questions, it was held in At-
torney General's Opinion C-187 that prepayments into the
perpetual care trust fund provided by the provisions of

Article 912a-15, Vernon's Civil Statutes, could not be made. On reconsideration, we have concluded that this holding is erroneous.

The pertinent portions of Article 912a-15, Vernon's Civil Statutes, prior to Senate Bill 121, are as follows:

> "Every cemetery association . . . which has established and is now maintaining, operating and/or conducting a perpetual care cemetery, and every association which shall hereafter establish, maintain, operate and/or conduct, a perpetual care cemetery within this State pursuant to this Act, shall establish . . . an endowment fund . . . . The principal of such fund for perpetual care shall never be voluntarily reduced, but shall maintain /remain/ inviolable and shall forever be maintained separate and distinct by the trustee or trustees from all other funds. . . . And the net income arising therefrom shall be used solely for the general care and maintenance of the property entitled to perpetual care in the cemetery for which the fund is established, . . . but shall never be used for the improvement or embellishment of unsold property to be offered for sale. . . .
>
> " . . .
>
> "A cemetery association which has established a perpetual care fund may also take, receive, and hold therefor and as a part thereof or as an incident thereto any property, real, personal or mixed, bequeathed, devised, granted, given or otherwise contributed to it therefor.
>
> "The perpetual care fund authorized by this Section and all sums paid therein or contributed thereto are, and each thereof is hereby, expressly permitted and shall be and be deemed to be for charitable and eleemosynary purposes. . . .
>
> "Each perpetual care cemetery shall deposit in its perpetual care fund an amount equivalent to . . . a minimum of twenty cents (20¢) per square foot of ground area sold or disposed of as perpetual care property . . . . A minimum of fifteen dollars ($15.00) per each crypt

interment right sold or disposed of as per-
petual care property, . . . and a minimum of
five dollars ($5.00) per each niche interment
right sold or disposed of as perpetual care
property . . . . Such minimum requirements
shall apply to all property in which the ex-
clusive right of sepulture has been sold or
paid for, whether used for interment purposes
or not.

"The deposit of such funds in the per-
petual care fund shall be made within thirty
(30) days after the receipt of the final pur-
chase price of each lot, grave, crypt, or
niche sold as property entitled to perpetual
care. . . ."

Under the provisions of Article 912a-15, the perpetual
care trust fund provided for therein constitutes a trust fund
"for the benefit and protection of the public by preserving
and keeping cemeteries from becoming places of disorder, re-
proach, and desolation in the communities in which they are
situated." Article 912a-15 requires certain minimum deposits
to be made into the perpetual care trust fund. These provisions
read as follows:

"Each perpetual care cemetery shall de-
posit in its perpetual care trust fund an
amount equivalent to such amount as may have
been stipulated in any contract under which
perpetual care property was sold prior to
March 15, 1934, plus a minimum of twenty
cents (20¢) per square foot of ground area
sold or disposed of as perpetual care prop-
erty after March 15, 1934, until such fund
reaches a minimum of One Hundred Thousand
Dollars ($100,000.00), after which each such
cemetery shall deposit an amount equivalent
to a minimum of ten cents (10¢) per square
foot of ground area sold or disposed of as
perpetual care property after March 15, 1934,
until September 3, 1945. Each such cemetery
shall deposit in its perpetual care trust
fund an amount equivalent to a minimum of
twenty cents (20¢) per square foot of ground
area sold or disposed of as perpetual care
property after September 3, 1945, until July
1, 1963. A minimum of Fifteen Dollars ($15.00)
per each crypt interment right for mausoleum

interment sold or disposed of as perpetual care property and a minimum of Five Dollars ($5.00) per each niche interment right for columbarium interment sold or disposed of as perpetual care property between March 15, 1934 and July 1, 1963, shall also be placed in such perpetual care trust fund. From and after July 1, 1963, each such cemetery shall deposit in its perpetual care trust fund an amount equivalent to a minimum of fifty cents (50¢) per square foot of ground area sold or disposed of as perpetual care property after said date. A minimum of Forty Dollars ($40.00) per each crypt interment right for mausoleum interment sold or disposed of as perpetual care property, except that on crypts accessible only through another crypt the minimum requirement shall be Twenty Dollars ($20.00) per each such crypt, and a minimum of Ten Dollars ($10.00) per each niche interment right for columbarium interment sold or disposed of subsequent to July 1, 1963, shall also be placed in such perpetual care trust fund. Such minimum requirements shall apply to all property in which the exclusive right of sepulture has been sold and paid for, whether used for interment purposes or not.

"After July 1, 1963, each agreement for the sale of burial space in a perpetual care cemetery shall set out separately the part of the aggregate amount agreed to be paid by the purchaser which is to be deposited in the perpetual care trust fund. If the aggregate amount agreed to be paid by the purchaser is payable in installments, all amounts paid thereon shall be applied, first, to the part thereof not required to be deposited in the perpetual care trust fund, to the extent thereof, and the remainder shall, when received by the seller, be deposited in the perpetual care trust fund. Any funds required to be deposited in its perpetual care trust fund by a seller of burial space shall be so deposited not later than ten (10) days after the end of the calendar month during which they are received. . . ."

It will be noted by the foregoing provisions that each perpetual care cemetery is required to make certain minimum

deposits into the trust fund and to maintain a certain minimum amount at all times in the perpetual care trust fund. There is no provision which prohibits a cemetery association from depositing or maintaining in the trust fund amounts in excess of the minimum required. Furthermore, there is no provision which either expressly or impliedly prohibits required deposits from being made in advance.

The construction placed on the provisions of Article 912a-15 by Attorney General's Opinion C-187 in effect prohibits the cemetery association from maintaining a perpetual trust fund in excess of the minimum required to be maintained by the making of prepayments. It is our opinion that this construction does violence to the purpose of the trust and such construction is not authorized.

In Wood v. State, 133 Tex. 110, 126 S.W.2d 4 (1939), the Supreme Court stated the rule of statutory construction applicable to your questions as follows:

"It is the settled law that statutes should be construed so as to carry out the legislative intent, and when such intent is once ascertained, it should be given effect, even though the literal meaning of the words used therein is not followed. Also, statutes should never be given a construction that leads to uncertainty, injustice, or confusion, if it is possible to construe them otherwise. . . ."

In view of the foregoing, you are advised that the stockholders of a cemetery association may prepay funds into its perpetual care trust fund either in advance of sales or during the life of the time-payment contract.

In answer to your second question, you are advised that where a surplus exists in a perpetual care fund from prepayments, credit may be taken against such surplus, providing the minimum required is maintained at all times. In determining whether a surplus exists from prepayments, no part of the trust fund resulting from donations to the trust fund may be considered. Attorney General's Opinion C-187 is modified to conform with the holding herein.

## SUMMARY

A cemetery association may make prepayment of funds into its perpetual care trust

fund, either in advance of sales or during the life of a time-payment contract. In determining whether a surplus exists from prepayments, no part of the trust fund resulting from donations to the trust fund may be considered.

Yours very truly,

WAGGONER CARR
Attorney General

By John Reeves
John Reeves
Assistant

JR:ms

APPROVED:

OPINION COMMITTEE

W. V. Geppert, Chairman
J. C. Davis
Linward Shivers
Edward Moffett

APPROVED FOR THE ATTORNEY GENERAL
By: Stanton Stone