George W. CHRISTY et al., Appellants,

v.

G. R. OLIPHINT et al., Appellees.

No. 12984.

Court of Civil Appeals of Texas.

Galveston.

May 24, 1956.

Rehearing Refused June 21, 1956.

Lloyd M. Lunsford, South Houston, for appellant.

Robert R. Breaker, La Porte; Homer T. Bouldin, Houston, for appellee.

HAMBLEN, Chief Justice.

Appellants instituted this suit in the District Court of Harris County as a statutory election contest. The election in question was held on April 5, 1955, in the City of South Houston for the purpose of electing a mayor, three aldermen and a city secretary. Appellees were declared to have been elected to the respective offices by the election officials. Appellants, who were the unsuccessful candidates for such offices, contested the election alleging numerous irregularities.

which they contended rendered the entire election void, or alternatively rendered the election of appellee Oliphint to the office of mayor void. Trial was before the court without a jury and resulted in a judgment declaring the election to have been regularly and properly conducted and declaring all of the appellees to have been elected to the respective offices for which they were candidates. This appeal is from that judgment.

In their brief appellants present nineteen formal points of error. All of such points have been grouped for argument and appear to this Court to present only two basic contentions. We deem it unnecessary, therefore, to state with particularity the points as stated in appellants' brief. Their two basic contentions to which all points relate are (1) that the entire election is void as the result of which a new election should have been ordered by the trial court, and (2) that the trial court erred in declaring that appellee Oliphint was elected to the office of mayor, it being their contention that the evidence compels the conclusion that appellant Christy was elected to that office. Both contentions are grounded upon legal propositions which have not been directly passed upon by an appellate court in this State. They will be considered in the order set forth.

The appellants' contention that the entire election is void rests upon the proposition that the ballots were not numbered by the election officials, which failure, they say, is violative of Sec. 4, Art. 6 of the Constitution of the State of Texas, Vernon's Ann.St. In order to understand this contention, it is necessary that additional facts be stated.

Votes in the election were cast by the respective electors upon mechanical voting machines, three of which were used. From the evidence in the record, it appears that there existed in fact only one ballot, being that printed ballot appearing within each voting machine and apparent to each voter at the time of casting his ballot. Each voting machine was equipped with automatic numbering devices, one of which was visible from the outside of the machine and recorded the number of each elector who entered such machine for the purpose of casting his vote. The other numbering device was protected from visibility until after the voting had ceased and recorded the number of votes cast for each respective candidate for each office. Without enlarging upon this description, we think it adequate to state that the machines employed in this election were in all respects similar in their operation to the voting machines discussed by the Supreme Court of this State in the case of Wood v. State ex rel. Lee, 133 Tex. 110, 126 S.W.2d 4, 121 A.L.R. 931, and by the Amarillo Court of Civil Appeals in Reynolds v. Dallas County, 203 S.W.2d 320. The first of such cases was a quo warranto proceeding, the second an injunction proceeding. In each was directly involved the constitutionality of voting machines such as are here involved and in each case it was held that the voting machines in question were not violative of Sec. 4, Art. 6 of the Constitution of the State of Texas. In each case we think it should be noted that it was pointed out by the court that the mechanics of the voting machines with which the court was concerned were such as to render it impossible to ascertain by inspection of the machine or any of its recordings how any particular voter had voted. The same condition exists with respect to the voting machines here involved.

The Election Code of this State, V.A.T.S., makes provision for the use of voting machines in Art. 7.14 of such Code. When that Code is examined, it becomes apparent that when all of the requirements which a voting machine must meet in order to qualify under the statute, are met, it would remain impossible by inspection of the machine or any of its recordings, to determine how any particular voter cast his vote. Art. 7.14 does require that the officials in charge of any election wherein votes are cast upon election machines shall place a number, on a list containing the names of each voter, corresponding to the number on the public numbering counter upon each voting machine. This requirement is particularly set forth in Secs. 8, 13, and 25 of Art. 7.14. In the present case, the evidence is undisputed that the officials in charge of this

election did not place a number, on a list containing the names of each voter, corresponding to the number on the public numbering counter on each voting machine. It is upon that failure that appellants rest their contention that this election is completely void. Its determination is not without difficulty. We have concluded, however, that the contention must be held to be without merit and that appellants' points of error presenting the same must be overruled.

■ As has been pointed out, it has been twice decided by courts of this State, once by the Supreme Court and once by the Amarillo Court of Civil Appeals, that voting machines similar in operation to those here involved are not violative of our constitutional requirement relative to numbering of ballots. It has been declared by courts of this State that the purpose of the constitutional requirement that ballots be numbered is that of enabling a court in an election contest wherein proof is made that certain ballots were illegally cast to ascertain how the voter who cast such ballot voted and thereby determine the true and legal result of the election involved. It is apparent to this Court that the requirement that the election officials shall place a number, on a list containing the names of each voter, corresponding to the number on the public numbering counter of each voting machine cannot in any manner effectuate that declared purpose. The number appearing upon the public numbering counter of each machine does nothing more than identify each voter numerically with relation to the total number of votes cast in that particular machine. It does not in any manner identify such number with the manner in which any particular voter casts his vote. To hold, therefore, that the failure of election officials to comply with this particular requirement of the Election Code renders an entire election void would effectually deprive electors of the right of suffrage without serving any useful purpose.

This Court, in the case of Ferrell v. Harris County Fresh Water Supply Dist. No. 23, 241 S.W.2d 242, 244, used the following language: "The right to vote is a constitutional one, and while the Legislature may impose regulations to ascertain the expressed will of the electors participating in the election, and to secure the fairness, purity and honesty of the election, and the determination of the result, only such regulations which from their very nature are deemed absolutely essential to accomplish the purposes of constitutional suffrage are deemed mandatory. Schrock v. Hylton, supra, Tex. Civ.App., at 133 S.W.2d [175] 178, and authorities cited."

■ The philosophy of the quoted portion of this Court's opinion has frequently been applied by courts of this State. It appears to be the established rule that statutes regulating the manner of holding elections are merely directory and that a departure from their provisions will not invalidate an election unless such departure or irregularity is shown to have affected or changed the result of the election. Sterling v. Ferguson, 122 Tex. 122, 53 S.W.2d 753; Thomas v. Groebl, 147 Tex. 70, 212 S.W.2d 625; Whiteside v. Brown, Tex.Civ.App., 214 S.W.2d 844; McWaters v. Tucker, Tex. Civ.App., 249 S.W.2d 80; Stafford v. Stegle, Tex.Civ.App., 271 S.W.2d 833.

As pointed out, strict compliance by election officials with the statutory requirement that a number shall be placed on a list containing names of each voter corresponding to the number on the public numbering counter of each voting machine could in no wise aid in the detection of any fraud, irregularity or illegality in the election. For that reason, we do not think it could be properly held that failure to comply with such requirement could, in view of the authorities cited, be held to invalidate the entire election.

Appellants' second contention is that the court erred in holding that appellee Oliphint was legally elected to the office of mayor, it being their contention that the evidence in the record compels the conclusion that appellant Christy was legally elected to that office. In connection with our discussion of this contention, it should be stated that this election was a bitterly contested one and was

close in its results. In so far as the office of mayor is concerned, the certified results made by the election officials are to the effect that a total of 1020 votes were cast for the office of mayor, of which appellee Oliphint received 512 votes, and appellant Christy received 508 votes, a margin of 4 votes in favor of appellee Oliphint. Upon the trial of this case, appellants offered proof conclusive in its nature that 10 electors who cast votes in the election for the office of mayor were not legally qualified as electors. After establishing the illegality of the votes cast by such electors, appellants undertook to interrogate such electors on the witness stand as to the candidate for whom they cast their ballots. Upon objection made by appellees, the trial court refused to compel such witnesses to testify as to the candidate for whom they had cast their ballots. It is appellants' contention that this action by the trial court was erroneous. It is further their contention that by circumstantial evidence appellees established how such illegal votes were cast, compelling the conclusion that if the results be tallied upon the legal votes cast appellant Christy is conclusively shown to have been elected to the office of mayor.

■ We are of the opinion that appellants are correct in their contention that the trial court erred in refusing to compel the witnesses, who were shown to be disqualified to vote, to testify as to the candidate for whom they cast their vote.

In the case of Wood v. State ex rel. Lee, supra [133 Tex. 110, 126 S.W.2d 9], the Supreme Court uses the following language:

"As we understand this record, the voting machines used in this election recorded the total number of votes for each candidate for Mayor, but did not make a record showing which candidate each voter voted for. It is therefore evident that the testimony in this regard must come from some other source. We think that one of the ways to ascertain how a voter voted, where a machine like this has been used, is to put such voter on the witness stand, and ask him the question. He can answer disclosing how he voted, if he so chooses. That is a matter the voter

himself can control. On the other hand, the Constitution guarantees each voter a secret ballot; consequently he can decline to reveal how he voted, if he so chooses. At any rate, if the voter answers purporting to tell how he voted, his credibility is for the jury to pass on, if the case is being tried before a jury. If the voter who has been placed on the witness stand refuses to divulge how he voted, such refusal is no evidence in the case one way or the other."

Appellees rely primarily upon the quoted portion of the Supreme Court's opinion in support of their contention that the trial court properly excluded the evidence tendered by appellants. The opinion of the Supreme Court in Wood v. State ex rel. Lee was handed down March 22, 1939. Shortly thereafter the Legislature, apparently in the light of the Supreme Court's decision, amended Sec. 23, Art. 7.14 of the Election Code to provide as follows:

"Sec. 23, Application of other Laws; Fraud and Perjury. The provisions of all other laws relating to the conduct of elections or primary elections, shall so far as practicable, apply to the conduct of elections and primary elections where voting machines are used, unless herein otherwise provided; provided, however, it is declared to be the public policy of this State that the provisions herein, providing for the use of voting machines at elections, are regulations to detect and punish fraud, and to preserve the purity of the ballot box; and any voter who fraudulently or illegally casts a ballot, or who casts a fraudulent or illegal ballot upon a voting machine, at any election (after the casting of such fraudulent or illegal ballot, or such fraudulent or illegal casting of a ballot has been established by final adjudication before a court of competent jurisdiction and by competent evidence), shall be compelled and required to disclose the names of the candidate or candidates for whom he cast such ballot at such election, and the ballot cast by him upon any question or questions at such election in any proceedings instituted under the laws of this State in any court of competent jurisdiction, and whoever in such proceedings shall swear and/or testify falsely, shall

be deemed guilty of the offense of perjury, and shall be subject to the penalties provided for such offense by the laws of this State."

When it is considered that if every requirement of the Election Code relating to the use of voting machines be strictly complied with, there is no method whereby the manner in which illegal votes were cast can be determined, it appears to us that the purpose of Sec. 23, Art. 7.14 of the Election Code is to provide a means whereby an election contest can be effectively tried. We are aware of the facts that the term "ballot" as used in Sec. 4, Art. 6 of our State Constitution has been repeatedly construed to mean "secret ballot" and that the courts have universally held that each elector is privileged to refuse to disclose how he cast his ballot. See Handy v. Holman, Tex.Civ. App., 281 S.W.2d 356, and cases there cited.

However, we do not see how this privilege can inure to the benefit of an elector who is shown to have illegally cast a ballot. In other words, we do not conceive it to be the law that an elector is entitled to a "secret ballot" when it is conclusively established that he is legally entitled to no ballot at all. In State ex rel. Lukovich v. Johnston, 150 Tex. 174, 238 S.W.2d 957, 959, the Supreme Court answered questions certified by this Court. While that case did not involve the use of mechanical voting machines, we think the following language is significant:

"It appears from the certificate before us that the poll list used in Precinct No. 14 at the election in question was before the court at the trial. From it Lukovich could have secured the names and addresses of all voters and could have compelled their attendance as witnesses at the trial. More than 300 of them would have said they were not assisted by Bock, so their testimony would have been brief. As to the 20 or 25 whom he did assist, to establish that fact plus the further fact that they were not entitled to such assistance under Art. 3010 [V.A.T.S. Election Code, art. 8.13], supra, would not necessarily take a great deal of time. That done, it would remain only to establish, *either by the testimony of the witness* or by examination of the ballot, for whom each voted and to deduct it from the proper candidate's total. Thus could the questionable ballots have been segregated and the admittedly good ballots given effect." (Emphasis supplied.)

We construe this language as supporting our conclusions in this present case, namely, that once the illegality of a witness's ballot is established, such witness no longer possesses the privilege of refusing to disclose the manner in which he cast such ballot. See also Doss v. Chambers, Tex.Civ.App., 188 S.W. 260, and 29 C.J.S., Elections, § 281, page 401. In the present case, the evidence conclusively establishes the fact that at least 10 ballots were cast and counted in the election for the office of mayor which were illegal ballots. The trial court so found in its findings of fact appearing in the transcript. We therefore conclude that the trial court erred in failing to compel such electors to disclose how they cast such illegal ballots.

■ We are unable to agree with appellants that by circumstantial evidence they proved conclusively that such illegal ballots were cast for appellee Oliphint in such number that if the results be retabulated according to the legal ballots cast, the proper result would be to declare appellant Christy to have been elected mayor. The circumstantial evidence upon which appellants rely consists of proof of close relationship between the candidate and the elector in question, or proof of party affiliation of the voter. While such evidence might support, it does not compel, a finding as to the manner in which an elector cast his ballot.

■ In determining the proper order which should be made in this appeal, this Court is confronted by the fact that in their brief, in so far as the office of mayor is concerned, appellants do not pray for a remand of this case for retrial but pray only for reversal and rendition of the judgment of the trial court. It is our opinion that the evidence does not warrant a reversal and rendition of the trial court's judgment. It is our opinion, however, that the record discloses errors heretofore pointed out which should properly entitle appellants to

a remand of the case for retrial solely upon the issue of the legality of the result of the election in so far as the office of mayor is concerned. We have concluded that even though the prayer in the brief be technically insufficient, that justice would be subserved by reversing the judgment of the trial court in so far as that judgment declares appellee Oliphint to be elected to the office of mayor of the City of South Houston and remanding the cause for retrial upon that issue in accordance with this opinion. See Old Line Mutual Life Ins. Co. v. Tilger, Tex.Civ. App., 264 S.W.2d 557.

It is, therefore, ordered that the judgment of the trial court be in part affirmed and in part reversed and remanded.

CODY, J., concurring.