# MARCH, 1957

## G. R. Olipint v. George W. Christy et al

No. A-5970. Decided March 13, 1957.
(299 S.W. 2d Series 933)

2

*Robert R. Breaker,* of South Houston, and *Homer T. Bouldin,* of Houston, for petitioners.

*Lloyd M. Lunsford,* of South Houston, for respondents.

MR. JUSTICE SMITH delivered the opinion of the Court.

This suit was instituted as a statutory election contest and we recognize it as a "contested election" within the meaning of Article 1821, Vernon's Annotated Civil Statutes. The suit as originally filed involved the contest of an election held in the city of South Houston, Harris County, Texas, on April 5, 1955 for the purpose of electing a Mayor, three Aldermen, and a City Secretary. Since this appeal involves only the two opposing candidates for the office of Mayor, the petitioner, G. R. Oliphint, and the respondent, George W. Christy, we shall refer to the parties as Mr. Oliphint and Mr. Christy.

The votes in the election were cast upon three voting machines which tabulated the results. There was one ballot which appeared within each voting machine and apparent to each voter at the time of casting his ballot. Each machine was equipped with automatic numbering devices, one of which was visible from the outside of the machine and recorded the number of

each elector who entered the booth of such machine for the purpose of casting his vote. The other numbering device was protected from visibility until after the voting ceased and recorded the total number of votes cast for each respective candidate for each office. It is not possible from the record made by the machine to determine in an election contest how each elector voted. The number of votes cast in this manner for the office of mayor totaled 1020 votes, of which Mr. Oliphint received 512 votes, and Mr. Christy received 508 votes, a margin of four votes in favor of Mr. Oliphint. Mr. Christy offered conclusive proof that ten of the electors who voted for the office of mayor were not legally qualified as electors. After establishing the illegality of the votes cast by such electors, Mr. Christy undertook to interrogate such electors on the witness stand as to the candidate for whom they cast their ballots. Three of these electors answered that they voted for Mr. Oliphint. However, Mr. Oliphint then made objection and the trial court refused to compel such witnesses to testify as to the candidate for whom they had cast their ballots. The Court of Civil Appeals in reversing and remanding the case stated "that the trial court erred in refusing to compel the witnesses, who were shown to be disqualified to vote, to testify as to the candidate for whom they cast their vote." 291 S.W. 2d 406.

This being an election contest we feel impelled to at once dispose of the question of whether the jurisdiction of the Court of Civil Appeals is final, and whether, therefore, this Court is without jurisdiction. Article 1821, supra, makes the jurisdiction of the Court of Civil Appeals final in "all cases of contested elections of every character," except those in which (1) a contest for state office is involved, (2) the validity of a statute is questioned by the decision of the Court of Civil Appeals, (3) the Judges of the Court of Civil Appeals have disagreed upon a question of law material to the decision of the case, or (4) the Court of Civil Appeals has held differently from a prior decision of another Court of Civil Appeals or of the Supreme Court upon a question of law. George W. Christy et al v. W. S. Williams et al., 156 Texas 555, 298 S.W. 2d 565, recently decided. We are of the opinion that this "contested election" suit is one in which the validity of a statute was questioned by the decision of the Court of Civil Appeals and that this case falls squarely within the second exception mentioned above. This ground of jurisdiction is asserted in Mr. Oliphint's petition for writ of error. The statute, the validity of which was questioned by the Court of Civil Appeals, is Section 23, Article 7.14 of the Elec-

tion Code, Vernon's Annotated Civil Statutes, and reads as follows:

"Section 23. Application of other Laws; Fraud and Perjury.

"The provisions of all other laws relating to the conduct of elections or primary elections, shall so far as practicable, apply to the conduct of elections and primary elections where voting machines are use, unless herein otherwise provided; provided, however, it is declared to be the public policy of this State that the provisions herein, providing for the use of voting machines at elections, are regulations to detect and punish fraud, and to preserve the purity of the ballot box; and any voter who fraudulently or illegally casts a ballot, or who casts a fraudulent or illegal ballot upon a voting machine, at any election (after the casting of such fraudulent or illegal ballot, or such fraudulent or illegal casting of a ballot has been established by final adjudication before a court of competent jurisdiction and by competent evidence), shall be compelled and required to disclose the names of the candidate or candidates for whom he cast such ballot at such lection, and the ballot cast by him upon any question or questions at such election in any proceedings instituted under the laws of this State in any court of competent jurisdiction, and whoever in such proceedings shall swear and/or testify falsely, shall be deemed guilty of the offense of perjury, and shall be subject to the penalties provided for such offense by the laws of this State."

■ The Court of Civil Appeals upheld the validity of this statute, but, in doing so, the court "questioned" the validity of such statute so as to give this court jurisdiction, although it was an election contest. Thomas v. Groebl, 147 Texas 70, 212 S.W. 2d 625. This Court, in the above case, settled the question in favor of taking jurisdiction with the following holding:

"This Court has jurisdiction of this case, although it is an election contest, because 'the validity of a statute (Chap. 333, Acts Regular Session of the 49th Legislature) is questioned by the decision' of the Court of Civil Appeals. See Article 1821, Revised Civil Statutes, as amended by Chapter 33, Acts Regular Session 41st Legislature, and Article 1728, as amended by Chapter 144, Acts Rgular Sssion 40th Legislature, Vernon's Annotated Civ. Stats. Arts. 1821, 1728."

While that court (Civil Appeals) sustained the Act as valid, its constitutionality was attacked by three points of error in the

appellant's brief and that court in its opinion gave consideration to them. The decision of the Court of Civil Appeals, therefore, questioned the validity of the statute, as it "raised a question about," "called in question" its validity and subjected the question to judicial examination. See Webster's New International Dictionary. Having jurisdiction of the case, this Court may also review and pass upon the question as to the correct construction of the Act, even though we may hold that the Act is valid. Mr. Oliphint questions the validity of the Act in this Court under his second point of error, which reads:

"The Court of Civil Appeals erred in holding that the constitutional privilege and right guaranteed a voter to keep his vote a secret vote or secret ballot could be, and was destroyed or denied by the Legislature of Texas, by enacting Section 23 of Article 7.14 of the Election Code of the State of Texas."

It is contended under this point that Section 23 is invalid and that the "constitutional right and privilege of a voter to a secret ballot cannot be changed or taken away by any Act of the Legislature," and that even though it has been conclusively established that the voter had cast an illegal ballot as defined in the Article, such illegal voter is entitled to the same protection under the Constitution as a legal voter. Mr. Oliphint further reasons that the holding of the Court of Civil Appeals in the present case is in conflict with the holding of this Court in the case of Wood v. State ex rel Lee, 133 Texas 110, 126 S.W. 2d 4, 121 A.L.R. 931, and the holding of the Court of Civil Appeals in the case of Handy et al v. Burke Holman, County Attorney et al, Texas Civ. App., 281 S.W. 2d 356, no writ history. Careful consideration of the Wood and Holman cases, supra, has convinced us that the holdings in these cases do not conflict with the holding in the present case. We deem it unnecessary to analyze the Holman case. It is sufficient to say that the Court in that case merely followed the reasoning advanced in the Wood case on the question of whether or not a witness (voter) could be compelled to waive his privilege of keeping his vote a secret if he claimed the privilege from self incrimination. The Wood case was decided in 1939, and was a Quo Warranto Proceeding. In that case the Court had before it two questions: (1) the constitutionality of voting machines, and (2) whether or not absentee ballots should be rejected merely because such voters were not actually absent on election day. The Court pointed out that Section 4, Article 6, of our Constitution contains four distinct provisions:

"1. It requires that in all elections by the people the vote shall be by ballot.

"2. It requires that in all elections by the people the tickets shall be numbered.

"3. It provides that the Legislature shall make such other regulations as may be necessary to detect and punish fraud and preserve the purity of the ballot box.

"4. It provides that the Legislature may provide, by law, for the registration of voters in all cities containing a population of ten thousand inhabitants or more."

In upholding the constitutionality of the voting machine, the court held that the first provision meant "that the voter in all elections shall be accorded a secret ballot." At this point we call attention to the significant distinction between the Wood case and the one at bar. The record in the former is void of any proof of illegal votes because of disqualification as contemplated by Section 23, supra, which statute, incidentally, was adopted in in 1939, but after the judgment in the Wood case had been declared by this Court. No effort was made to compel a witness to testify; in fact, none of the provisions of Section 23, supra, were under consideration. Obviously, this could not have been otherwise. We must conclude that the Court in the Wood case was concerned with the question of illegal voters only to the extent that all ballots cast by the voters by the use of the voting machine would have been illegal if the Court should hold the voting machine unconstitutional. The Court stated the legal effect of such a holding when it commented:

"* * * We are at a loss to understand how the unconstitutionality of the voting machine in question can aid or comfort Lee in this appeal. If the voting machine used for absentee voting was void, and the votes cast thereon therefore also void, the same is true of all other votes cast at such election, because they were also cast or voted on the same kind or character of a voting machine. If all votes were void, no election at all was held, and Lee cannot be seated."

The Court simply held that the fact that the voting machine failed to record which candidate each voter voted for was no ground to declare the machine unconstitutional or the votes cast illegal, and then went on to say:

"As we understand this record, the voting machines used

in this election recorded the total number of votes for each candidate for Mayor, but did not make a record showing which candidate each voter voted for. It is therefore evident that the testimony in this regard must come from some other source. We think that one of the ways to ascertain how a voter voted, where a machine like this has been used, is to put such voter on the witness stand, and ask him the question. He can answer disclosing how he voted, if he so chooses. That is a matter the voter himself can control. On the other hand, the Constitution guarantees each voter a secret ballot; consequently he can decline to reveal how he voted, if he so chooses. At any rate, if the voter answers purporting to tell how he voted, his credibility is for the jury to pass on, if the case is being tried before a jury. If the voter who has been placed on the witness stand refuses to divulge how he voted, such refusal is no evidence in the case one way or the other."

Clearly, the Court, when it referred to the right of a voter to refuse to reveal for whom he voted was speaking of the right of a legal voter. In no sense can it be said that the Court was passing upon the constitutionality of Section 23, supra, which provides that an illegal voter may be compelled to disclose for whom he voted in order to preserve the purity of the ballot.

■ The Wood case was decided on March 22, 1939 and Section 23 was enacted by the 46th Legislature on June 13, 1939. Conclusively, the Court could not have passed upon Section 23 as it was not even in existence nor effective at the time the Wood decision was handed down. Further, if it appears that two holdings are contrary to one another, but a statute, which overrules the first holding, has intervened or interceded during the lapse of time between the two decisions, there is no conflict. This is true because the law of the first case has been changed by legislative enactment and that statute is open to interpretation for the first time. Thus the state of the law is once again open to another and new construction by the courts. The mere fact that the Legislature may have thought that the holding of the Wood case also applied to illegal voters, is not conclusive upon this Court. For reasons stated above, it is our opinion that the rule announced in the Wood case applies only to legal voters and that the holding of the Court of Civil Appeals is not in conflict with the rule announced in the Wood case.

The primary question presented by this appeal is whether an elector, shown to have voted illegally, can be compelled to testify as to the candidate for whom he cast his vote. It is es-

sential that a proper predicate be laid showing that such an elector was not qualified to vote at such an election. It is our belief that Mr. Christy made an adequate showing that each of the ten electors challenged were illegal voters. The votes cast by the illegal electors are not to be counted in the final results. It is therefore necessary to show for whom these illegal electors voted. Although the voting machines used in this election tabulate the total votes for each respective candidate, they make no record showing which candidate each elector voted for. Therefore, the only possible method to ascertain how an elector voted is to put him on the witness stand and ask him how he voted. Wood v. State, ex rel Lee, supra. Section 23 mandatorily requires that the illegal voter be compelled and required to disclose the name of the candidate for whom he cast his ballot. Before passing Section 23, it is apparent that the Legislature did have the benefit of the Wood case. It appears that the Legislature wanted to make certain that the holding would not be misconstrued to include an illegal voter. It can be inferred that the Legislature wanted a more definitive appraisal of the whole problem of legal and illegal voters in relation to the discovery of fraud to preserve the purity of the ballot box. To make this a reality, the Legislature passed Section 23 to prevent any misconstruction of the Wood holding which might occur. This action by the Legislature was within their power as construed by the Wood case when the Court stated in relation to Section 4, Article 6, of the Texas Constitution:

"The third provision of the above-mentioned constitutional amendment is that the Legislature shall make such other regulations as may be necessary to detect and punish fraud, and preserve the purity of the ballot. *This constitutional provision is addressed to the sound discretion of the Legislature*. It is not for the courts to attempt to direct what laws the Legislature shall enact to comply with it." (Emphasis added).

■ To hold that the Legislature meant to say by the language in parenthesis in said section that the legality of the vote must be first determined and established by final adjudication before a court of competent jurisdiction before the illegal voter could be compelled to testify in an election contest would render the entire statute meaningless and would defeat the manifest intention of the legislature and effectively prevent an election contest. We prefer to hold that the words "final adjudication" mean rather that the illegality of the vote has been determined by the judge in an election contest upon competent evidence. Thus, the Legislature, burdened with the duty of making regulations as

may be necessary to detect and punish fraud and to preserve the purity of the ballot, passed Section 23. Under this construction by the Supreme Court, the Legislature had the power to pass Section 23. Although the right to a secret ballot obtains in this State, there are certain "public interests which outweigh the individual's right to have his ballot kept secret." Sewell v. Chambers, Texas Civ. App. 1948, 209 S.W. 2d 363, no writ history. It is also true that legal voters may not be compelled to disclose how they voted, but it does not follow that illegal voters enjoy the same privilege. In fact, it is difficult to see how any fraud whatsoever could be detected in any election by way of a voting machine if the illegal voter enjoys the same privilege as the legal voter. If the illegal voter is clothed with this same privilege, then Section 4 of Article 6 of the Texas Constitution would become a nullity as there would be no way to detect fraud in an election. The privilege of nondisclosure belongs only to the legal voter and the individual who votes illegally cannot be considered a "voter" for any purpose. The ballot of the illegal voter is not to be counted and is not to be considered as a vote in any way. This vote becomes a nullity and it is necessary to deduct that vote from the total number of votes cast for the candidate who initially received it. Therefore, the person voting illegally cannot claim the privilege of the legal voter. In Corpus Juris Secundum, Volume 29, page 401, Elections 401, it is said:

"While a voter is generally held competent to testify as to how he voted, and an illegal voter may be compelled to do so unless he claims the privilege against self-incrimination, a legal voter cannot be compelled to testify as to how he voted."

Once it is established that the individual is an illegal voter, such person no longer possesses the privilege of nondisclosure nor does he possess the right to the secrecy of his ballot. It follows that the illegal voter can be compelled to disclose for whom he voted unless he claims and is entitled to the privilege against self incrimination.

In the third point of error, Mr. Oliphint attacks the propriety of the order of the Court of Civil Appeals reversing and remanding the cause when there was only a prayer for reversal and rendition of the judgment of the trial court. Even though the evidence did not warrant a reversal and rendition of the judgment and even though the prayer is technically insufficient for a remand of the judgment of the trial court, we believe that the order was proper. Mr. Christy has pointed out errors in the record of the trial court which properly entitles him to a re-

mand of the cause. In the interest of time and to serve the ends of justice the judgment of the trial court should be reversed and remanded for a retrial in so far as it declares Mr. Oliphint to be elected to the office of Mayor of the City of South Houston. See Old Line Life Insurance Co. v. Tilger, Texas Civ. App., 1953, 264 S.W. 2d 557, no writ history.

The judgment of the Court of Civil Appeals is affirmed, and the cause is remanded to the trial court for a retrial of the issues as between Mr. Oliphint and Mr. Christy, all in accordance with this opinion.

Opinion delivered March 13, 1957.

MR. JUSTICE NORVELL dissenting.

To my mind the clause placed within the parenthesis in Article 7.14, Section 23, Vernon's Annotated Election Code, renders such section inapplicable to the facts disclosed by the present record. These words are: "(after the casting of such fraudulent or illegal casting of a ballot has been established by *final adjudication* before a court of competent jurisdiction and by competent evidence)." A "final adjudication" could only take place in a proceeding held anterior to the election contest itself. This construction may render the statute largely ineffective, but we are hardly at liberty to disregard the well established and recognized meaning of the term "final adjudication." 16 Words & Phrases 583.

I accordingly dissent from the order affirming the judgment of the Court of Civil Appeals.

Opinion delivered March 13, 1957.