**610**

**A. J. CARUBBI, Jr., Appellant,**

v.

**William J. CRAIG, Appellee.**

**No. 7679.**

Court of Civil Appeals of Texas.

Amarillo.

Aug. 15, 1966.

Ochsner, Nobles & Baughman, Amarillo, Frank J. Baughman, Amarillo, of counsel, for appellant.

Carubbi, Warner & Jeter, Pampa, Will D. Davis, Austin, Ben Johnson, Tyler, Ray Pearson, El Paso, Brooks, Jones & Gordon, Tom Gordon, Abilene, appearing amicus curiae, for appellant.

Folley, Snodgrass, Calhoun & Kolius, Amarillo, V. G. Kolius, Amarillo, of counsel, John Studer and Harold L. Comer, Pampa, Small, Small & Craig, Austin, for appellee.

PER CURIAM.

This is a primary election contest filed under Article 13.30 of the Election Code, V.A.T.S. that concerns the invalidity or illegality of votes of certain persons who are alleged to have voted in the Republican Primary in Gray County on May 7, 1966, and then voted in the Second Democratic Primary for the office of County Judge on June 4, 1966.

In the Second Primary the incumbent county judge, the honorable William J. Craig, received 1785 votes and A. J. Carubbi, Jr. received 1777 votes as shown by the canvass of the County Executive Committee. An answer with special exception was filed on June 13, 1966, to the original contest petition. Contestant Carubbi then filed his "First Amended Original Election Contest Petition" on the next day in which he named some seventy persons in nine separate precincts and seven absentee voters which he alleged had first voted in the Republican Primary Election held on May 7, 1966, and who subsequently voted in the Second Democratic Primary held on June 4, 1966, in violation of Article 240, Vernon's Annotated Penal Code. He alleged all such votes were illegal and " * * * that he has good reason and in fact does believe and alleges to be true that a sufficient majority of said illegal votes were cast for defendant, so that if such illegal votes are discarded as they should be, and not counted, plaintiff would be the winner of said election." Mr. Carubbi also made affidavit that he had examined the polling lists of the respective elections and had found that

more than fifty of the voters who voted in the Republican Primary also voted in the Second Democratic Primary. He then alleged the necessity for the district judge ordering all ballot boxes and election records of the May 7, 1966, Republican Primary Election held on that day and all ballot boxes and election records of the Second Democratic Primary Election held on June 4, 1966, being impounded, opened and those illegal votes being counted and the total subtracted from the total votes received by the respective candidates.

We find no exception in the transcript to the amended petition but since the judgment shows the trial court on June 15, 1966, " * * * having heard and considered defendant's special exception to plaintiff's pleadings and having heard and considered plaintiff's objections to defendant's special exception" held contestee's special exception should be sustained and contestant's objections thereto should be overruled, we assume it was considered by all the parties that the exception went to all the pleadings. The question thus presented is whether the ballots of the persons alleged to have voted in the Republican Primary of May 7, 1966, cast illegal ballots by then going into the Second Democratic Primary and voting in the county judge's race on June 4, 1966.

All emphases herein are ours.

We hold the special exception to contestant's First Amended Original Petition was not sufficient.

Section (7) of Article 13.30 of the Election Code provides the trial judge shall have wide discretion as to matters of pleadings but that the purpose of such section is to subserve the ends of justice, rather than strict compliance with technical rules of pleading.

Many years ago when the Supreme Court of Texas had jurisdiction in Primary Election Contests that court announced the distinctions between Primary Elections and General Elections and the purposes for primary elections. In Waples v. Marrast, 108 Tex. 5, 184 S.W. 180, L.R.A.1917A, 253, that court said:

"The authority of the Legislature to require the holding of a primary election by the political parties of the State for the purpose of enabling their members to vote their choice for party nominees for elective offices, whether State or National, and likewise express their preference in the selection of party delegates to party conventions, is undoubted."

Then in discussing political parties Chief Justice Phillips speaking for the Court stated:

"According to the soundness of their principles and the wisdom of their policies they serve a great purpose in the life of a government. But the fact remains that the objects of political organizations are intimate to those who compose them. They do not concern the general public. They directly interest, both in their conduct and in their success, only so much of the public as are comprised in their membership, and then only as members of the particular organization. They perform no governmental function. They constitute no governmental agency. The purpose of their primary elections is merely to enable them to furnish their nominees as candidates for the popular suffrage. In the interest of fair methods and a fair expression by their members of their preference in the selection of their nominees, the State may regulate such elections by proper laws, * * *"

Later in Koy v. Schneider, 110 Tex. 369, 221 S.W. 880, 905, the Texas Supreme Court said:

"Essential to the very existence and practical operation of any comprehensive and reasonable primary election law is a requirement that all the participants therein shall be of the same political faith, *as that only Democrats shall participate in democratic primary elections.*"

\*      \*      \*      \*      \*      \*

"Under the view that our suffrage clause applies to primary elections and primary conventions as well as to 'general elections,' every man who is a qualified voter in a general election logically would have a constitutional privilege, regardless of party affiliations or party fealty, of voting in every primary election and in every primary convention in his general election precinct. *That would render futile all party organization involving the use of primary election or primary convention machinery. In practice it would destroy, utterly, primary elections and primary conventions, since without party fealty they cannot efectuate the purpose of their existence.*"

The court then stated that:

"To prevent party disintegration resulting from participation of adherents of no party, or of another party, in a party primary, has been the declared purpose of primary election statutes in various states."

In 1951 during the session of the 52nd Legislature of Texas that law-making body revised and recodified Title 50 of the Revised Civil Statutes of the State of Texas now generally[1] contained in Volume 9 of Vernon's Civil Statutes of Texas denominated by said publishing company as "Election Code" and announced in Section 1 of the legislative act to be hereafter known as the Election Code of the State of Texas.

Article 13.01 of the code defines the term "primary election" as one " * * * held *by the members of an organized political party for the purpose of nominating the candidates of such party to be voted for at a general or special election * * *"*

Article 13.01a(2) provides: "The *election and convention procedure of the party shall include the primary held on the first Saturday in May in even-numbered years and the second primary held on the first Saturday in June in such years * * *"*

(4) (a) of said article makes one a qualified member of the political party in whose primary he has voted.

The next paragraph of the article provides:

"Each voter shall present his poll tax receipt or exemption certificate, or an affidavit of its loss, to the election judge *on the first time such voter participates in a primary election and the election judge shall stamp within the party affiliation space on the face of said poll tax receipt, exemption, or affidavit of loss, the words 'Democrat' or 'Republican' or* other party primary vote connotation as the case may be *and such stamped poll tax receipt,* exemption, or affidavit of loss *shall be the designation of a qualified member of that party; such qualified member of such party, having once voted within a party primary shall remain a qualifed member of that party for the duration of the poll tax period.*"

■ In accepting the allegations of contestant as true, which we must for the purpose of considering the special exception, it then becomes obvious that the alleged illegal voters having become members of the Republican party for the 1966 election year then voted in the second primary of the Democratic party in direct contravention of the articles just quoted by which they had become members of the Republican party for the purpose of primary elections and conventions for 1966. The Election Code makes no provision for one to change parties during the primary voting and convention period. It was admitted by all parties in oral argument that Texas is not an "open" primary state. Additionally, by participating in the Second Democratic Primary after voting in the first primary of another party the same election year they committed a penal offense under the primary election code procedure.

---

1. We use the word "generally" because some of the penal provisions are also con- tained in Vernon's Penal Code of the State of Texas.

As necessity has dictated the Election Code has been amended, revised and added to from time to time. Numerous revisions were made in the 58th Legislature, regular session, 1963, by S.B. 61, Chapter 24, p. 1017. Among those was Section 115 of S.B. 61 amending Article 240 of the Penal Code, which provided, as applicable to our case that:

"Whoever votes or offers to vote at a primary election * * * having voted at a primary election * * * of any other party during the same election year, shall be fined not less than one hundred dollars nor more than five hundred dollars. As used in this article, the term 'election year' means the period from the first day of February through the following thirty-first day of January."

We, therefore, believe it would have to be said that such acts were illegal and the ballots cast thereby were thus illegal votes, for whomsoever they may have been cast. We believe any other holding would provide means whereby one party could destroy the other.

The Supreme Court of Texas in Oliphint v. Christy, 157 Tex. 1, 299 S.W.2d 933, has said: " * * * the individual who votes illegally cannot be considered a 'voter' for any purpose. The ballot of the illegal voter is not to be counted and is not to be considered as a vote in any way. This vote becomes a nullity and it is necessary to deduct that vote from the total number of votes cast for the candidate who initially received it."

The judgment of the trial court is reversed and remanded with instructions to impound the ballot boxes and election records of the May 7, 1966, Republican Primary Election and the ballot boxes and election records of the Second Democratic Primary Election held on June 4, 1966; that they be opened under the supervision and in the presence of the trial court, and that the illegal votes be counted and the total subtracted from the total legal votes received by the respective candidates. Upon determining who received the most legal votes after a hearing upon the merits, the trial court is directed to declare the duly elected nominee of the Democratic party for the office of County Judge of Gray County for 1966. The trial court is further directed to notify the county clerk of Gray County of the result in order that the name of the nominee may be placed on the official ballot to be used in the General Election to be held in November of 1966.

In accordance with the authority of Article 13.30 of the Election Code and in the interest of time a motion for rehearing will not be entertained and the mandate of this court will issue forthwith.

The judgment of the trial court is reversed and remanded with instructions.