Margarita **LIGHTBOURN**, et al.,

v.

**COUNTY OF EL PASO, TEXAS**, et al.,

v.

**Antonio GARZA, Jr.,** Secretary of State of Texas.

No. EP–94–CA–299–DB.

United States District Court,
W.D. Texas,
El Paso Division.

Nov. 22, 1995.

Martin Coleman, Disability Advocacy Project, El Paso, Texas, James Harrington, Texas Civil Rights Project, Austin, Texas, for plaintiffs.

Dennis Garza and Dedra L. Wilburn, Assistant Attorneys General, Austin, Texas, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BRIONES, District Judge.

On this day, the Court enters its Findings of Fact and Conclusions of Law in the above-captioned cause. A bench trial was held beginning June 12, 1995, and continued over the next few days. This case deals with the most fundamental element of a representative democracy, the right and privilege of voting. This is a case of first impression regarding the applicability of the Americans with Disabilities Act (herein "ADA") codified at 42 U.S.C. § 12101 *et seq.,* to state voting regulations. Plaintiffs have likened the present treatment of disabled voters in the State of Texas to "separate but equal" status. Predictably, the state vehemently denies this characterization. After a lengthy period of research and careful consideration, the Court is of the opinion that the cause should be decided as set forth below.

### I.

The procedural history of this case is somewhat convoluted. Plaintiffs' original Complaint was filed in this Court on September 9, 1994. Five disabled Plaintiffs sued the County of El Paso, the El Paso County Democratic Party and the El Paso County Republican Party. The County of El Paso filed a Third–Party Complaint against the Secretary of State of Texas in his capacity as chief election officer of the state. Plaintiffs then sought class certification and leave to amend their Complaint. Both Motions were granted. Plaintiffs' First Amended Complaint added another individual plaintiff and the Disabled Ability Resource Environment, an El Paso-based, not-for-profit Texas corporation for disabled advocacy. Also added to Plaintiffs' Complaint were direct causes of action against the Secretary of State for violations of the ADA. The class was certified as all mobility-impaired and visually-impaired voters in the State of Texas in a separate Order of the Court.

The Secretary of State changed from Ronald Kirk to Antonio Garza.[1] Court documents were changed to reflect this fact. Pursuant to a FED.R.CIV.P. 12(b)(6) motion,

1. At trial, counsel for the Secretary of State alleged that the instant action was politically motivated. The Court patiently notes that the cause was originally filed against Mr. Kirk, a Democrat, not Mr. Garza, a Republican. This change was due to an intervening election.

the Republican Party was dismissed.[2] Soon thereafter, the Democratic Party settled with the Plaintiffs, presumably to avoid being viewed as insensitive to the disabled. Shortly before trial, the County of El Paso settled with the Plaintiffs. Thus, the sole Defendant at the non-jury trial held beginning June 12, 1995, was the Secretary of State for the State of Texas. The Court bifurcated the trial into a liability and a remedy phase. Pursuant to the Court's order in this regard, the remedy phase will only be held if the parties cannot reach an agreement in light of this opinion.

## II.

■ All plaintiffs are qualified individuals with disabilities as that term is defined in the Americans with Disabilities Act. They are mobility-impaired or sight-impaired residents of El Paso County, Texas. They are all registered voters. A class of disabled voters (sight and mobility impaired) in the State of Texas was certified by this Court. The representative class members testified as to specific difficulties in voting, on election day, in El Paso County and in other counties throughout the State of Texas. This testimony was uncontroverted and unrebutted. The State pointed out that the testimony regarding voting in other counties concerned events which occurred prior to the passage of the ADA but not prior to the passage of the Rehabilitation Act or the Voting Rights Act. The State failed to point out any changes or improvements implemented since the passage of the ADA in the other counties. Further testimony was illicited regarding voting in El Paso County after passage of the ADA. The Court notes that the Rehabilitation Act and the Voting Rights Act predate the ADA. Since the ADA is not to be applied retroactively, the Court will not consider evidence of discrimination prior to the enactment of the ADA. *O'Bryant v. City of Midland,* 9 F.3d 421 (5th Cir.1993).

■ Defendant quotes Department of Justice Letters of Finding as a defense of the present system. The Court is not bound by a Department of Justice review or finding in any way. These letters represent the posi-tion of the Department of Justice as to the meaning of the aforementioned laws. As the parties and this Court are all too aware, at this time there is no case law which supports the propositions advanced by the Plaintiffs or the defenses raised by the Defendant.

## III.

■ Defendant argues that the changes requested by the Plaintiff would work a fundamental change in the voting system in the State of Texas. The Court does not agree with this overly-broad statement; it would work a change in how disabled voters are treated only.

Defendant concedes that the Plaintiffs have a right to a secret ballot under Texas law, but cites the Court to two cases, *Oliphint v. Christy,* 157 Tex. 1, 299 S.W.2d 933 (1957) and *Sewell v. Chambers,* 209 S.W.2d 363 (1948) for the proposition that there are certain public interests which outweigh the individual's right to a secret ballot. Defendant alleges that a system allowing the visually-impaired to vote would raise the specter of fraud. Defendant, however, miscites these cases. Both of these cases had to do with fraud and illegal voting during an election and were brought after the conclusion of the election. Neither of these factors are present in the case-at-bar. In *Oliphint,* the Court noted that only those persons who participated in the election *illegally* had no right to a secret ballot and therefore those persons could be compelled by a competent tribunal to disclose for whom they voted. Those who voted legally could not be so compelled. 299 S.W.2d at 935–36. Plaintiffs argue that they have a right to a secret ballot, not that there is fraud or illegal voting. See *Wood v. State ex rel. Lee,* 133 Tex. 110, 126 S.W.2d 4 (1939) (cited approvingly in *Oliphint, supra* ). Regardless of the warnings of Defendant, the possibility of fraud or illegal voting is just that, a possibility, and not, therefore, before the Court.

Similarly, Defendant spent considerable time discussing the cost of a system which would allow the visually-impaired to vote. It

---

**2.** There was no allegation that any named Plaintiff intended or ever attempted to vote in a Re- publican Party primary election or participate in a Republican Party precinct convention.

is Defendant's contention that cost is a public interest of such vitality as to permit the secrecy of the ballot to be ignored. The cost of providing a system which would allow the Plaintiffs to exercise their fundamental right in secret is as speculative as the Defendant's possibility of fraud defense.[3] The Court is aware that there is an economy of scale problem faced by the state; in a "typical" ADA case the employer can show that the qualified individual can be accommodated for "X" number of dollars. The state is facing a much larger number of people to accommodate. Thus, the fact that the dollar amount seems like a large number is something of a red herring in that this number should be divided by the number of people to be benefited and the number of counties to be affected. In that context, the cost does not seem quite as large.[4] Likewise, the state discussed program accessibility versus barrier removal and noted that public entities are not held to the same standard as public accommodations. Regardless, both the cost argument and the accessibility argument, like the fraud argument, are premature; what the actual remedy is to be will be determined later.

Previously, Congress addressed the problem of handicapped access in the Voting Accessibility for the Elderly and Handicapped made part of the Voting Rights Act at 42 U.S.C. § 1973ee, *et seq.* Evidently, Congress did not feel that this measure was sufficient, as it revisited and specifically addressed the same issue six years later in the ADA. It is this Court's express finding that the ADA and the Voting Rights Act are to be read in conjunction.

In the ADA, Congress found that:

(2) historically, society has tended to isolate and segregate individuals with disabilities and despite some improvements, such forms of discrimination against in-

dividuals with disabilities continue to be a serious and pervasive social problem;

(3) discrimination against individuals with disabilities persists in such critical areas as ... **voting and access to public services**....

42 U.S.C. § 12101(a) (emphasis added). Moreover, § 12132 of the ADA requires that:

Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity.

Section 504 of the Rehabilitation Act codified at 29 U.S.C. 794 states:

No otherwise qualified handicapped individual in the United States, as defined in Section 706(8) of this title, shall, solely by reason of his or her disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

There is no doubt that Plaintiffs have a right to vote and may vote legally. They are otherwise qualified to participate in the activity of voting in Federal elections.

Thus, having determined that the Plaintiffs have a constitutional right to vote, a right to a secret ballot and that the reasons advanced by the state for failure to observe this right is at best, speculative, the question before the Court is whether this failure is in violation of these acts.

It is undisputed that the Secretary of State is a public entity subject to Title II of the ADA, 42 U.S.C. § 12131–34 and Section 504 of the Rehabilitation Act, 29 U.S.C. 794. The Secretary of State is the chief elections officer for the state, the person who all political subdivisions in Texas call for advice and the person who bears the responsibility for uni-

---

**3.** There was no evidence that the state had actually attempted to provide such a viable system prior to the filing of this lawsuit.

**4.** The Court notes that the State of Texas has expended considerable resources in seeking to avoid affording its handicapped citizens equal treatment in their right to vote under the law.

Had these same resources gone to development of a system for the disabled or to enforce already existing laws, a lawsuit may not have been necessary. The state could also have spent the time to come to an agreement with Plaintiffs and saved a great deal of time and money for this Court and the state.

formity in the various voting systems in use throughout the state. "The secretary shall prepare detailed and comprehensive written directives and instructions relating to and based on this code and the **election laws outside this code.**" V.T.C.A. Election Code § 31.003 (Vernon's 1986) (emphasis added). Section 31.005 of the same code charges the Secretary of State with protection of voting rights:

(a) The secretary of state may take appropriate action to protect the voting rights of citizens of this state from abuse by the authorities administering the state's electoral processes.

(b) If the secretary determines that a person performing official functions in the administration of any part of the electoral process is exercising the powers vested in that person in a manner that impedes the free exercise of that citizen's voting rights, the secretary may order the person to correct the offending conduct. If the person fails to comply, the secretary may seek enforcement of the order by temporary restraining order or a writ of injunction or mandamus obtained through the attorney general.

The first requirement of any approved system of voting in Texas is that the system must "preserve the secrecy of the ballot" V.T.C.A. Election Code § 122.001(a)(1) (Vernon's 1995). Once again, the Secretary of State is responsible for inspecting and validating a proposed voting system. Handicapped voters presently take an assistant or are to be assisted by election judges, one from each party in the case of a general election. The Secretary of State concedes that no present system assures the secrecy of the ballot for visually-impaired voters other than enforcement of election laws making it a crime to disclose how someone voted, which would be the same enforcement method afforded non-handicapped voters. Likewise, under the present system there is no means by which a visually-impaired voter may verify *in his own mind* that his ballot is properly marked. It is the Secretary of State who must act to end any discrimination.

Testimony at trial illicited a great deal of "how to" vote evidence regarding visually-impaired voters, but not necessarily much "where to" vote evidence regarding mobility-impaired voters. Section 43.034 of the Texas Election Code requires that buildings used as polling places be accessible to the elderly and physically handicapped. This section mirrors the language in the Voting Rights Act. The Texas statute places the duty to follow the statute on the local political subdivision. The law is unclear as to how this statute is enforced. Nevertheless, the Court is of the opinion that the final enforcer of this section is the Secretary of State.

Finally, it is the Court's explicit finding that accommodating handicapped voters does not in any way affect the manner in which non-handicapped citizens currently vote, that is, it does not require modifications which would fundamentally alter the nature of the vote for all other citizens. 28 C.F.R. § 35.130(b)(7).

### Conclusion

With regard to the mobility-impaired voters, it would seem that the State of Texas has in place statutes which would, if enforced properly, provide for accessibility to polling places on election day. Presently, by the clear language of Texas statute, all polling places should be handicapped accessible as accessible is defined in Texas law and in the ADA.

As to visually-impaired voters, it is clear that all voters in Texas have a right to a secret ballot and to vote on election day at their local precinct. Although on its face, the argument seems ludicrous, Defendant's contention seems to be that Texas law affords a secret ballot only if it is not too much trouble. The ADA is about equality; Plaintiffs seek to be afforded the same rights and privileges as their non-handicapped peers on election day.

The system of voting in the State of Texas does not presently comport with the Americans with Disabilities Act. The present system discriminates against the disabled. Visually-impaired voters in the State of Texas have a right to vote as would any other citizen on election day, secretly, at the precinct in which the voter lives. Mobility-im-

paired voters have a right to vote with their neighbors at the local polling place. Fiery rhetoric aside, the Court notes that the Plaintiffs are willing to accept what is, in effect, "separate but equal" status at their local polling place as an improvement over their present situation. They do not ask that every voting machine be operable by handicapped persons but only that some accommodation be made for them at their neighborhood polling place with a machine designed to address their special needs. In this day of low voter turnout and general apathy in the electorate, simplifying access to the polls for a group of people with a history of political activity is in the best interest of both the state and federal government. It is their right as citizens and is required by the ADA.[5]

Accordingly, from a preponderance of the evidence adduced at trial, the Court finds in favor of the Plaintiff and against the Defendant Secretary of State.

Finally, because the Court has found that the amount of time attorneys take to do something will expand to fill whatever amount of time granted to them by the Court, the hearing to determine the remedy in this case shall be scheduled during the week of December 18, 1995. The parties are afforded approximately thirty days to come to some agreement as to a remedy in this case. Otherwise, the Court will hear testimony and fashion a remedy.

SO ORDERED.

---

**5.** Walter Scott observed that "Necessity is the mother of courage, as of invention." Benjamin Franklin noted that "Necessity never made a good bargain." Both men were correct. Although it will not be easy, Texas has an opportunity to lead the nation into a world of equality for the handicapped and the disabled regarding the most cherished right and greatest responsibility in any democracy.