Susan Sexton MELTON Plaintiff,

v.

ORANGE COUNTY DEMOCRATIC PARTY; Jan Allen, Chairmen and all current board members including Keith Cook, Richard Frank, Sharon Worthington S.A.M. Brooks, Roscoe Reeve and Randy Brantley, et al. Defendant.

No. 1:96 CV 517.

United States District Court, M.D. North Carolina.

Feb. 11, 2004.

Susan Sexton Melton, Pro Se, Hillsborough, NC, for Plaintiff.

John G. McCormick, Jeffrey E. Rosner, Eric W. Hinson, Law Office of John G. McCormick, P.A., Chapel Hill, NC, Robert Harrison Sasser, III, Mark Allen Davis, Womble, Carlyle, Sandridge & Rice, Raleigh, NC, for Defendants.

Stephen Luke Largess, Ferguson, Stein, Wallas, Adkins, Gresham & Sumter, P.A., Charlotte, NC, for Amicus.

Seth H. Jaffe, American Civil Liberties Union of N.C., Raleigh, NC, Pro se.

## MEMORANDUM OPINION

TILLEY, Chief Judge.

This matter is before the Court on Defendant Orange County Democratic Party's Motion to Dismiss [Doc. # 49], which was converted to a Motion for Summary Judgment by order of this Court on August 5, 1998. [Doc.# 61]. For the reasons set forth below, summary judgment for the Defendant will be GRANTED.

### I.

Plaintiff Susan Melton first brought suit in this matter on June 24, 1996, alleging violations of both the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act of 1990 ("ADA") by the Orange County Democratic Party ("OCDP") and the Orange County Board of Elections. In an order dated December 11, 1997, this Court granted motions by both Defendants to dismiss, but provided Ms. Melton an opportunity to amend her Complaint. Ms. Melton filed an Amended Complaint on January 12, 1998, and both Defendants again filed motions to dismiss.

On August 5, 1998, this Court granted Defendant Orange County Board of Elections' motions to dismiss, and granted OCDP's motion to dismiss as to the Reha-

bilitation Act claim. OCDP's motion to dismiss the ADA claim was converted into a motion for summary judgment. Thus, the only matter remaining before this Court is OCDP's summary judgment motion as to Ms. Melton's ADA claim.

Ms. Melton's ADA claim against the OCDP stems from an incident at the Big Barn Convention Center ("Big Barn") in Hillsborough, North Carolina. The OCDP rented the Big Barn on March 31, 1996 for the purpose of holding a rally for candidates in the upcoming local elections. Ms. Melton is unable to climb stairs without difficulty and claims that stairs within the facility prevented her full enjoyment and use of the building.[1]

Summary judgment is proper only when there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e). No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Because Title II of the ADA only governs the actions of public entities,[2] the OCDP would be entitled to judgment as a matter of law if this Court finds that it is not a public entity. On March 4, 2003, at the conclusion of a hearing, this Court entered an order instructing the parties to file briefs addressing whether the OCDP is a public entity under the ADA. [Doc. # 86]. Ms. Melton failed to submit a brief within the allotted time. However, the American Civil Liberties Union, as *amicus curiae,* submitted a brief in support of finding the OCDP to be a public entity. [Doc. # 89]. The OCDP filed a brief in response. [Doc. # 91].

## II.

The central issue remaining in Ms. Melton's suit is whether the OCDP is a public entity, and is therefore governed by Title II of the ADA. For the reasons set out below, this Court finds that it is not. Title II of the ADA, which prohibits discrimination against qualified individuals by public entities, defines the term "public entity" to include:

(A) any State or local government;

(B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and

(C) the National Railroad Passenger Corporation, and any commuter authority

42 U.S.C. § 12131(1).

The issue of whether a local or state political party is a public entity as defined by the ADA is one of first impression. Neither the Fourth Circuit nor the Supreme Court have directly addressed the issue. In fact, this Court has not found any federal or state case directly addressing the issue.[3] However, administrative materials provide some guidance in deter-

---

1. Ms. Melton also has had difficulty gaining access to the OCDP's headquarters, which she also claims were not handicapped accessible.

2. 42 U.S.C. § 12132 provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

3. While a federal case in Texas involved a suit against two local political party organizations, the Court was never asked to determine whether either political party was a public entity because the case against the political party defendants was disposed of on other grounds. *Lightbourn v. County of El Paso, Tex.,* 904 F.Supp. 1429 (W.D.Tex.1995).

mining whether an organization is a public entity. Further guidance can be found from an examination of organizations which have been found to be public entities.

The United States Department of Justice has provided administrative materials addressing the meaning of the term public entity under the ADA. The Justice Department materials are entitled to deference because Congress directed the Department to issue implementing regulations,[4] provide manuals explaining the responsibilities of covered entities,[5] and enforce Title II in court.[6] *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

The regulations issued by the Justice Department simply restate the definition of public entity found in the statute. 28 CFR § 36.104. However, the technical assistance manual that the Civil Rights Division of the Justice Department issued pursuant to 42 U.S.C. § 12206 provides a more detailed explanation. The manual explains that, as a general rule, "Title II is intended to apply to all programs, activities, and services provided or operated by State and local governments." The manual goes on to list four factors that may be used in determining whether an organization is a public entity.

1) Whether the entity is operated with public funds;

2) Whether the entity's employees are considered government employees;

3) Whether the entity receives significant assistance from the government by provision of property or equipment; and

4) Whether the entity is governed by an independent board selected by members of a private organization or a board elected by the voters or appointed by elected officials.

*The Americans with Disabilities Act: Title II Technical Assistance Manual* II–1.2000 (Nov.1993).

The OCDP is not a program "provided or operated by" local government. Instead, the OCDP is a private association, largely operated through private donations and volunteer workers. The association functions to support the election of Democratic candidates, not to generally increase voter participation or provide other services to the general public.

An analysis of the factors provided in the Justice Department's manual also leads to a conclusion that the OCDP is not a public entity. As to the first factor, the OCDP does receive some government funding. However, the bulk of its operating income comes from private contributions. Further, the second, third, and fourth factors lean against finding the OCDP to be a public entity. Most of the OCDP's workers are volunteers, and those that are employees are not considered government employees. There is no evidence that the state provides the OCDP any property or equipment, much less a significant amount of either. As to the fourth factor, any registered Democrat residing in Orange County is automatically a member of the association, and may vote to elect the association's officers. Therefore, officers are elected by members of the OCDP, not by the population at large or by any elected official. In sum, the additional detail provided in the administrative materials does not support a finding that the OCDP is a public entity.

An examination of the entities which federal courts have found to be public enti-

4. 42 U.S.C. § 12134(a).

5. 42 U.S.C. § 12206(c).

6. 42 U.S.C. § 12188(b).

ties under the statute also supports a finding that the OCDP is not a public entity. Courts have found that public universities,[7] state judicial nominating commissions,[8] boards of trustees of a city police pension fund,[9] city zoning boards of appeals,[10] and state boards of law examiners[11] are public entities. All of these entities have been given authority under local law to provide services for the city or state. Unlike these entities, the OCDP was neither created by the state or local government, nor works for general government purposes. The OCDP simply provides financial and other support for Democratic Party candidates on behalf of private members of the community.

*Amicus* argues that the two major political parties so dominate the election process as to serve a public function. However, this involvement in the election process does not make the private OCDP a public entity for ADA purposes. *Amicus* cites a long history of Supreme Court cases treating political parties as state actors where the parties have blocked access to ballots because of invidious racial discrimination. *Amicus* concludes that, although a political party is a private organization for purposes of First Amendment freedom of association, the First Amendment does not bar intervention into party practices where necessary to prevent derogation of civil rights.

While it is true that political parties may not violate the United States Constitution, and may be deemed state actors for those purposes, the line of cases cited by *amicus* are inapplicable to the issue in this case. The narrow issue in this case hinges on the statutory interpretation of the ADA, and its application to the OCDP. Therefore, examination of the state action line of cases cited by *amicus* is unnecessary.

## III.

For the reasons set forth above, Defendant Orange County Democratic Party is not a public entity governed by the ADA and, therefore, its Motion for Summary Judgment will be GRANTED.

## JUDGMENT

This matter is before the Court on Defendant Orange County Democratic Party's Motion to Dismiss [Doc. # 49], which was converted to a Motion for Summary Judgment by order of this Court on August 5, 1998. [Doc.# 61]. For the reasons set forth in a contemporaneously filed Memorandum Opinion, summary judgment for the Defendant will be GRANTED.

---

7.  See e.g., *Davis v. Univ. of N.C.*, 263 F.3d 95 (4th Cir.2001).

8.  *Doe v. Judicial Nominating Comm'n for Fifteenth Judicial Circuit of FL*, 906 F.Supp. 1534 (S.D.Fla.1995).

9.  *Piquard v. City of East Peoria*, 887 F.Supp. 1106 (C.D.Ill.1995).

10.  *Innovative Health Sys., Inc. v. City of White Plains*, 931 F.Supp. 222 (S.D.N.Y.1996).

11.  See e.g., *Ware v. Wyoming Bd. of Law Exam'rs*, 973 F.Supp. 1339 (D.Wyo.1997), affirmed 161 F.3d 19.